## A98A1963. GRAY v. ELIAS.
(513 SE2d 539)

RUFFIN, Judge.

Johnny Elias sued Gregory Gray for injuries sustained in an automobile collision. Gray did not answer the complaint, and admitted being in default, but requested a jury trial on the issue of damages only.[1] The jury returned a verdict for Elias in the amount of

---

[1] It is unclear why Gray admitted liability and only contested damages. Gray was added as a defendant by amendment, and the trial court apparently did not order him to answer

$300,000. On appeal, Gray contends that the trial court erred in failing, sua sponte, to charge the jury on the definition of proximate cause. Because such failure did not constitute a substantial error that was harmful as a matter of law, we affirm.

Elias testified at trial that he was a deputy sheriff with the Muscogee County Sheriff's Department.[2] On November 4, 1994, while transporting a prisoner, his vehicle was struck from behind by a cab driven by an employee of Gray. Elias was thrown forward and backward by the impact. After the incident, Elias saw the county's workers' compensation doctor over a period of several weeks, although the record does not reflect the nature of these visits.

On December 28, 1994, Elias was examined by Dr. Howard Willis. Willis testified that he had previously given Elias a complete physical about three months before the collision. Willis testified that Elias did not mention any back problems at that time, although he told Dr. Willis that he had sustained some unspecified injuries while playing college football years earlier.[3] When Dr. Willis examined Elias after the collision, Elias complained of back pain, describing it as a "burning sensation" like "heartburn on my back." Dr. Willis testified that, at the time, he thought Elias had a low back sprain and possibly a herniated nucleus pulposus. Elias returned to see Dr. Willis on three more occasions over the next seven months, each time complaining of back pain.

Dr. Willis had an MRI scan performed on the lumbar area of Elias' back and testified that the MRI "showed that there was no disk herniation but some arthritic changes and a disk bulge." With respect to the disk bulge, Dr. Willis testified that the disk had "lost some of [its] cushion effect . . . [a]nd that's usually the result of some sort of traumatic injury." With respect to the arthritic changes, the doctor testified that there were "areas where the bone [had] been nicked or sort of eroded off from what would — would appear to be arthritic changes. Traumatic changes could do that." He testified that the loss of disk cushioning produced the arthritic changes, resulting in an unstable joint.

On cross-examination, Dr. Willis admitted that an individual could develop a bulging disk in any number of ways, including lifting

---

the complaint. Therefore, it does not appear that Gray was required to answer the complaint. See *Hamelberg v. Nat. Assn. of Government Employees*, 221 Ga. App. 337-338 (471 SE2d 283) (1996). Nevertheless, Gray admits that the trial was contested only on the issue of damages.

[2] Although no transcript was made of the trial, the parties submitted narratives of what transpired to the trial court pursuant to OCGA § 5-6-41, and the court entered two separate orders resolving the conflicts between the parties' accounts.

[3] Dr. Willis' testimony was presented by way of videotaped deposition, and the transcript of the testimony is included in the record.

weights, leaning over the wrong way, or getting out of bed. He also admitted that an individual could develop arthritic changes in bone without any trauma. However, he believed that Elias' injuries were caused by the collision because Elias had not complained of back problems before the collision and because it would be unusual to see such localized damage without some form of trauma or precipitating event. Willis also testified that Elias had scoliosis in the upper back, but said he had never heard of such a condition causing bulging disks or degenerative changes.

Elias testified that, before the incident, he was able to bench press 400 pounds, but that after the incident he was unable even to pick up his daughter. Several of Elias' coworkers testified that his demeanor had changed since the collision, and that Elias was afraid prisoners would learn of his bad back and try to attack him. Gray did not present any evidence at trial.

At the close of evidence, the trial court gave the following instruction on damages: "No plaintiff may recover for injuries or disabilities which are not connected with the act or omissions of the defendant in this case. There can be no recovery for a particular plaintiff for any injury or disability which was not proximately caused by the incident in question. If you should find that, at the time of the incident, the plaintiff had any physical condition, ailment, or disease which was becoming apparent or was dormant, and if you should find that the plaintiff received an injury as a result of the accident, and that the injury resulted in any aggravation of a condition already pending, then the plaintiff could recover damages for aggravation of the preexisting condition." Gray raised no objection to the charge.

On appeal, Gray claims that the trial court erred in failing to instruct the jury on the meaning of the term "proximate cause." Citing *Cedrone v. Beck*, 74 Ga. App. 488, 491 (2) (40 SE2d 388) (1946), he contends that the court should have charged that "proximate cause is that which is nearest in order of responsible causes and which stands next in causation, not necessarily in time and place, but in causal relation."

OCGA § 5-5-24 (a) states that "[e]xcept as otherwise provided in this Code section, in all civil cases, no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection." However, OCGA § 5-5-24 (c) states that "the appellate courts shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not." Because Gray raised no objections to the court's charge, we will not reverse unless the fail-

ure to give Gray's suggested charge on the definition of proximate cause constituted a substantial error that was harmful as a matter of law.

We have held that "OCGA § 5-5-24 (c) must be strictly construed to prevent emasculation of subsection (a), and that the instances in which the subsection applies are rare." (Citation omitted.) *Moore v. Sinclair*, 196 Ga. App. 667, 672 (6) (396 SE2d 557) (1990). "To constitute harmful error within the meaning of this subsection, an erroneous charge or failure to charge must result in a gross injustice, such as to raise a question as to whether the appellant has been deprived of a fair trial." (Punctuation omitted.) Id.

In this case, the trial court correctly instructed the jury that Elias could not recover for any injury unless the injury was proximately caused by the incident in question. The only question on appeal is whether, under the facts of this case, the court's failure to define the term "proximate cause" resulted in such a gross injustice as to raise a question of whether Gray was denied a fair trial.

We think it did not. "The requirement of proximate cause constitutes a limit on legal liability; it is a policy decision that, for a variety of reasons, e.g., intervening act, the defendant's conduct and the plaintiff's injury are too remote for the law to countenance recovery." (Punctuation omitted.) *Atlanta Obstetrics &c. Group, P.A. v. Coleman*, 260 Ga. 569 (398 SE2d 16) (1990). This case did not involve evidence of multiple, intervening, or superseding causes or other factors that can render proximate cause an elusive concept. The jury in this case was presented with evidence that Gray negligently caused the automobile collision and that Elias sustained back injuries. Faced with these facts, the jury could conclude either (1) that Elias' injuries were in fact caused by the collision, (2) that Elias' injuries were not in fact caused by the collision, or (3) that Elias had a preexisting condition that was aggravated by the collision. With respect to the last possibility, the jury was clearly charged that it could award damages only for the aggravation of the preexisting condition, and only if such aggravation was caused by the collision. Under each of these three scenarios, the basic inquiry was whether the collision was the cause-in-fact of Elias' injuries, not whether such cause-in-fact was sufficiently "proximate" to impose liability. Gray has not shown how, if the jury found that the collision in fact caused Elias' injuries or aggravated a preexisting condition, it could fail to award damages on the basis that some other cause was more proximate.

As appellate judges, we are not required to set aside our common sense; nor do we underestimate the intelligence of the jury. Under the particular facts of this case, we find it unlikely that Gray's suggested charge — that "proximate cause is that which is nearest in order of responsible causes and which stands next in causation, not

necessarily in time and place, but in causal relation" — would have so greatly increased the jury's understanding of its duty that the failure to give such charge deprived Gray of the right to a fair trial. Although the failure to charge on the definition of proximate cause may constitute reversible error under other facts even in the absence of objection — for instance, where there are multiple causes-in-fact of an injury — Gray has failed to show how he was harmed by such failure in this case. Accordingly, we find that Gray's failure to request such a charge or object to the charge given constituted a waiver of any right to complain on appeal. OCGA § 5-5-24 (a). See generally *Branch v. Maxwell*, 203 Ga. App. 553, 555-556 (5) (b) (417 SE2d 176) (1992) (affirming verdict in automobile negligence case despite trial court's failure to define proximate cause as part of negligence charge, where charge as a whole adequately informed jury of applicable law).

*Taft v. Taft*, 209 Ga. App. 499 (433 SE2d 667) (1993) does not require a different result. In that case, we reversed the trial court due to its failure to provide a definition of proximate cause even though the appellant failed to make "a timely and proper request for a specific proximate cause charge." Id. at 501 (2). However, unlike the present case, *Taft* involved evidence of multiple causes-in-fact. The plaintiff in that case was injured while attempting to corral a bull owned by the defendant. The plaintiff claimed that he could not close the gate in time because the defendant had not properly fastened the gate. Id. at 501 (1). Thus, the jury could have concluded that plaintiff's injuries were caused either by plaintiff's negligence in failing to close the gate or by defendant's negligence in failing to properly fasten the gate. In the present case, by contrast, it is undisputed that the collision was caused solely by Gray's negligence, and the only question is whether the collision was the cause-in-fact of Elias' injuries. Moreover, *Taft* did not consider the effect of OCGA § 5-5-24 (a) or (c), and did not discuss whether the failure to give the suggested charge constituted a "substantial error" that was "harmful as a matter of law." We decline to extend the holding in *Taft* by adopting a rule that failure to charge the definition of proximate cause always constitutes a substantial error that is harmful as a matter of law, requiring reversal even in the absence of objection.

*Judgment affirmed. Pope, P. J., and Beasley, P. J., concur.*

DECIDED MARCH 8, 1999 — 

*Sidney L. Moore, Jr.*, for appellant.
*Charles A. Gower*, for appellee.