A02A2455. RAY M. WRIGHT, INC. et al. v. STINCHCOMB.

(576 SE2d 566)

PHIPPS, Judge.

Plaintiffs, Ray M. Wright, Inc. and others (collectively referred to as "Wright"), are a group of corporate homebuilders. Defendant (Dan Stinchcomb) is a real estate developer, who agreed to sell Wright 116 lots in a subdivision in Fayette County. Under the agreement, Wright paid Stinchcomb $10,000 in earnest money and purchased 71 of the lots. Wright brought this action against Stinchcomb for specific performance of his agreement to sell Wright the remaining 45 lots. The trial court ruled that Stinchcomb is entitled to summary judgment because Wright did not tender the purchase price for the remaining lots within the time frame required by the agreement. Because there is evidence from which a jury could find that Wright was ready, willing, and able to purchase the lots in a timely manner but that Stinchcomb did not have the lots ready for purchase, we reverse.

In Special Stipulation 1 to the parties' agreement, Wright agreed to buy the lots in the following two phases: "(a) Sixty (60) lots will close ten (10) days after final plat is recorded and lots are ready for building permits to be issued. (b) The remaining fifty-six (56) lots will be closed nine (9) months from the closing date of the first sixty (60) lots." Under Special Stipulation 2, the first 60 lots were to be sold for $27,500 each, and the remaining 56 lots were to be sold for $28,000 each. The agreement was executed on or about February 20, 1998, and the closing of the 60 lots in the first phase occurred on or about January 21, 2000. At the time of that closing, Wright purchased 11 additional lots for $28,000 each because the final plats for those lots had also been approved and recorded.

On February 11, 2002, Wright filed this action seeking, among other things, specific performance of Stinchcomb's agreement to con-

vey the remaining lots for $28,000 each and damages, including return of the $10,000 in earnest money. Stinchcomb answered and moved for summary judgment, arguing that the agreement was unenforceable because it contained a "time is of the essence" clause, and Wright failed to consummate purchase of the remaining forty-five lots within the required nine-month period. Stinchcomb claims that he is entitled to retain the earnest money as liquidated damages for Wright's breach of contract.

Wright filed a cross-motion for summary judgment, supported by affidavits executed by the principals of each corporate homebuilder. Affiants testified that in the building industry, a lot cannot be purchased by a builder until the developer has obtained final approval from the appropriate governing authority for a final plat of the lot and has properly recorded the plat, so that the builder can obtain building permits. According to the affiants, the parties agreed to Special Stipulation 1 (b) because Stinchcomb said he could obtain approval of the final plat of the lots in the second phase and have it recorded within nine months after the closing of the lots in the first phase. Affiants testified that they made numerous attempts to learn when the final plat would be approved and recorded so that they could close on the remaining lots within the nine-month time period; that the closing did not occur within that time frame due to the city's failure to approve the final plat; that this resulted from Stinchcomb's failure to take necessary steps to complete work on the property; and that all of these circumstances were beyond Wright's control. Although the final plat was approved by the City of Fayetteville and recorded by Stinchcomb on February 4, 2002, he has refused to convey the remaining lots to Wright. One of the affiants testified that Stinchcomb remarked that he was not going forward with the contract, because he was dissatisfied with the low price for which he had agreed to sell the remaining lots.

In granting summary judgment to Stinchcomb, the trial court noted that the parties' agreement contained no language conditioning the closing of the second phase of the property on approval or recordation of the final plat. The court in effect ruled that imposition of such a condition would be inconsistent with Special Stipulation B of the agreement. Special Stipulation B made the agreement contingent upon Wright's "ability to acquire all required licenses and permits from the appropriate governmental authority to build on the [p]roperty." Special Stipulation B further provided that if, within 180 calendar days after the agreement became binding, Wright notified Stinchcomb of an inability to acquire all required licenses and permits from the appropriate governmental authority to build on the property, then the agreement would automatically terminate and Stinchcomb would promptly refund the earnest money. If Wright

failed to provide such notice, then Special Stipulation B provided that the contingency would be deemed waived. Because Wright failed to make a tender of the purchase price for the lots in the second phase within nine months of the closing of the lots in the first phase, or to notify Stinchcomb of an inability to acquire the necessary permits within 180 days after the agreement became binding, the trial court concluded that Wright was entitled neither to specific performance of the agreement nor to return of the $10,000 earnest money.

" 'Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.' [Cit.]"[1] In this case, there are material issues of fact on the question of whether Wright breached the parties' agreement by failing to make a timely tender of the purchase price for the lots in the second phase or whether Stinchcomb breached the agreement by not readying the lots for sale by obtaining the city's approval of a final plat.

It is true that, by its express terms, the agreement imposed no duty on Stinchcomb to obtain approval of the final plat so that the sale of lots in the second phase could be closed. Nonetheless, Wright presented evidence from which a jury could find the existence of such a duty. In this regard, Special Stipulation 1 of the agreement continually referred to "lots," without defining the term. Parol evidence is admissible to explain the meaning of this contractual term by reference to trade usage and custom.[2] Wright argues that the term "lot," as used in the building trade and therefore in the agreement, denotes a parcel of property that has been finally platted so that building permits can be issued for it. Wright submitted affidavit testimony in support of this argument. And, as argued by Wright, the Georgia Property Owners' Association Act defines "lot" as meaning a plot or parcel of land "shown on a recorded subdivision plat for a development."[3] From this parol evidence a jury would be authorized to find that the delay in closing resulted from Stinchcomb's failure to develop the property into "lots" so that Wright could purchase them. Wright's failure to tender the money for the lots within the nine-month time period is not an absolute bar to this suit, as a jury could find that, under the circumstances, a tender would have been useless. " 'The law does not require a useless act.' [Cit.]"[4]

Construing Special Stipulations 1 and B so as to give meaning and effect to both,[5] a jury could find that Special Stipulation 1 obli-

[1] *McCoy v. West Bldg. Materials*, 232 Ga. App. 620 (502 SE2d 559) (1998).

[2] See *Pace Constr. Corp. v. Houdaille-Duval-Wright Div.*, 247 Ga. 367, 368 (276 SE2d 568) (1981); see also *All Angles Constr. &c. v. MARTA*, 246 Ga. App. 114, 115 (1) (539 SE2d 831) (2000).

[3] OCGA § 44-3-221 (9).

[4] *Jackson v. Southern Pan &c. Co.*, 260 Ga. 150, 151 (1) (b) (390 SE2d 393) (1990).

[5] See *Schaffer v. City of Marietta*, 220 Ga. App. 382, 383 (1) (469 SE2d 479) (1996).

gated Stinchcomb to have lots in both the first and second phases finally platted so that Wright could obtain building permits for all of them, and that Special Stipulation B gave Wright a right to terminate the agreement if building permits could not be obtained even if the lots had been finally platted. Under the agreement as so construed, Wright's failure to invoke Special Stipulation B did not relieve Stinchcomb of his obligations under Special Stipulation 1.

Although the buyer's failure to tender the purchase price by a specified date generally bars an action for specific performance if a contract for the sale of land expressly provides that time is of the essence,[6] it is also well settled that, where time is of the essence in a contract, the seller may waive timely performance orally or by conduct.[7]

> When such conduct occurs, "the seller should not see if a better sale can be made, and later urge that time is of the essence [of the] contract." [Cit.] Whether waiver took place is an issue for the trier of fact. [Cit.] . . . "A party to a contract can not cause a breach or delay in compliance by the other, and then set up the breach or delay so caused as freeing him from the contract." [Cits.][8]

*Judgment reversed. Andrews, P. J., and Mikell, J., concur.*

DECIDED DECEMBER 18, 2002 —
RECONSIDERATION DENIED JANUARY 15, 2003 — CERT. APPLIED FOR.

*Carlock, Copeland, Semler & Stair, Johannes S. Kingma, R. Keith Whitesides*, for appellants.

*Holland & Knight, Harold T. Daniel, Jr., Laurie W. Daniel, Scott L. Bonder, Jason B. Thompson*, for appellee.

---

[6] *Benedict v. Snead*, 271 Ga. 585-586 (519 SE2d 905) (1999).
[7] *English v. Muller*, 270 Ga. 876 (1) (514 SE2d 194) (1999).
[8] Id. at 876-877.