A03A2549. SETLIFF et al. v. LITTLETON et al.
(592 SE2d 180)

BLACKBURN, Presiding Judge.

In this appeal from a plaintiff's verdict in a personal injury lawsuit, Carter Setliff contends that the trial court erred (1) in refusing to direct a verdict on certain damages, and (2) by charging or by failing to correctly charge the law in seven separate jury instructions. For the reasons set forth below, we affirm.

To recover damages attributable to a motor vehicle accident, Kelly Littleton, Sally Littleton, and Kelly's father, James T. Littleton, brought suit against Setliff, the administrator of the estate of Prafulchundra Amin.[1] In responding to the complaint, Setliff, on behalf of Amin's estate, denied liability, claiming that "[t]he collision complained of resulted solely, directly and proximately by reason of a sudden medical emergency which suddenly rendered Prafulchundra Amin unconscious; and, which he had no prior warning of, was not under treatment for, had not experienced prior to the time of the collision, and cannot be held liable for." The answer denied that Amin was driving on the wrong side of the road, too fast for conditions, or without due care, and that Amin's actions were negligent, grossly negligent, or negligent per se.

---

[5] *Jordan v. State*, 172 Ga. App. 496, 498 (2) (323 SE2d 657) (1984).
[1] Apparently, Amin was 75 years old when he drove on the wrong side of the road. Amin died from causes totally unrelated to the automobile accident.

At trial, Kelly Littleton was the only person to testify in person. She testified that on April 27, 1998, a white van operated by Amin had crossed over a double yellow line and continued in the wrong lane before striking her car. Littleton, then only 15 years old, had a valid learner's permit and her mother, Sally Littleton, was with her. Littleton described seeing Amin's vehicle cross the double yellow line and come toward her car and how, despite her efforts to avoid the collision, Amin's van "hit the whole right front side of the car."

As a result of the collision, Littleton suffered neck, back, and knee injuries. Although her neck and back problems resolved, the knee problems did not abate despite surgery on both knees. Littleton testified that before the accident, she had been on her high school varsity tennis and swimming teams, but that afterward she could no longer play tennis or swim due to the pain and strain on her knees. She described having trouble walking or standing for extended periods of time even when she wore her knee braces.

The Littletons offered the videotaped deposition of Thomas P. Branch, M.D., a board-certified orthopedic surgeon, who operated on her knees. Dr. Branch described in detail the surgical procedures that he performed and the rounds of crutches and physical therapy that Littleton had to undergo. According to Dr. Branch, by age 50 or 60, she will have a "very good chance" of needing total knee arthroplasty on both knees. In Dr. Branch's expert medical opinion, she will be dealing with "her bilateral knee pain for the rest of her life," is at significant risk for developing arthritis in her knees, and will need a lifetime of physical therapy. In his professional opinion, to a reasonable degree of medical certainty, her ongoing knee problems are attributable to the motor vehicle collision with Amin.

On behalf of the defense, the videotaped testimony of two other doctors was presented. The defense tried to imply or insinuate that something other than the collision with Amin's van, such as a fall on some stairs or a different automobile accident, was the actual cause of Littleton's knee problems. The jury awarded $244,774.34 to her.

1. Setliff contends that the trial court erred by refusing to direct a verdict on the issue of the medical bills incurred by Sally Littleton on behalf of her daughter while she was a minor. Setliff claims that since Kelly Littleton did not turn 18 until April 18, 2001, the "medical bills incurred prior to April 18, 2001 are the responsibility of her parents." Setliff argues that "Sally Littleton was not able to prove she was entitled to an award of $17,634.68 of medical bills," incurred prior to Kelly Littleton's eighteenth birthday.

This rather arcane argument overlooks the incontrovertible fact that the jury did not award any damages to Sally Littleton. For whatever reason, Sally Littleton elected not to present any case on her own behalf. The verdict form plainly reflects that the jury

awarded the entire amount of $244,774.34 solely to Kelly Littleton. Even assuming that Setliff meant to argue that Kelly Littleton could not recover amounts paid by her parents during her minority, that argument must likewise fail. Evidence of special damages, including the medical expenses incurred while Littleton was a minor, was admitted without objection. Exhibit 2 documents that Littleton's medical expenses were already in excess of $44,700 and that her future medical expenses for knee replacement surgeries were estimated at $50,000 in present dollars. But, in entering its general verdict, the jury did not segregate how much of its lump sum award was attributable to pain and suffering or to present medical expenses or to future ones. Therefore, it is impossible to say that in calculating the damages, the jury, in fact, included the medical expenses incurred by her parents while Littleton was still a minor, as Setliff now claims. See *Jarrell v. State Merit System &c.*[2] (right to recover for minor's medical expenses vested exclusively in parents).

In any event, the issue was waived. After the jury returned the general verdict, the trial court asked counsel, "Any objection to the form of the verdict?" to which defense counsel replied, "No, Your Honor." Counsel's failure to object to the form of verdict effectively waived any possible irregularity. *Williams v. Adams.*[3] Further, since the verdict seems to fall within the range of evidence, we will not disturb the judgment entered thereon. See id.

2. In five distinct claims enumerated as error, Setliff asserts that the trial court erred by charging the jury on obeying the rules of the road, driving on the left side of the road, driving on the right side of the road except as permitted by OCGA § 40-6-40 (a), overtaking a vehicle while traveling on the left side, and yielding the right of way, because "liability had been admitted."

At the charge conference, the trial court informed counsel that the jury would be instructed on general negligence principles. At that point, defense counsel queried, "Even though we are admitting liability?" The trial court responded, "But y'all are not admitting anything. You are just admitting you caused the wreck." Defense counsel did not object to the trial court's interpretation of the proceedings or attempt to dispute that characterization. Setliff has not cited and we have not found in the transcript where the defense unconditionally stipulated to liability.[4]

---

[2] *Jarrell v. State Merit System &c.*, 205 Ga. App. 527, 528 (423 SE2d 1) (1992).

[3] *Williams v. Adams*, 170 Ga. App. 35, 36 (1) (316 SE2d 1) (1984).

[4] Outside the presence of the jury, defense counsel seemed to argue that the admission of the certified copy of Amin's traffic conviction was tantamount to "[a]dmitting liability for the accident."

"Although a guilty plea is an admission against interest and prima facie evidence of the facts admitted, it is not conclusive that [Amin] was negligent and is only a circumstance to be considered with other evidence in a civil action for damages." *Sanders v. Moore.*[5] So even though a certified copy of Amin's guilty plea to driving on the wrong side of the road was entered in evidence, Littleton still had to establish not only Amin's negligence but also that his negligence caused her alleged damages. See *Tuggle v. Helms.*[6]

While conceding that the defense failed to object to the five charges dealing with the rules of the road, Setliff now argues that this Court should consider those charges under the "substantial error" rule codified at OCGA § 5-5-24 (c). We disagree. OCGA § 5-5-24 (a) mandates that litigants in civil trials must distinctly state their grounds for objecting to the trial court's giving or refusing to give a jury charge. Subsection (c) of OCGA § 5-5-24 authorizes an exception to this rule of law only "where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not." To avoid emasculating the rule that civil litigants must distinctly state their grounds for objection, this Court has held that OCGA § 5-5-24 (c) "must be strictly construed" and that instances in which subsection (c) applies are "rare." *Gray v. Elias.*[7] "To constitute harmful error within the meaning of this subsection, an erroneous charge or failure to charge must result in a gross injustice, such as to raise a question as to whether the appellant has been deprived of a fair trial." (Punctuation omitted.) *Moore v. Sinclair.*[8] After considering the relative weakness of the defense's case, we cannot say that these charges created such a "gross injustice" as to deprive Setliff of a fair trial. See id.

3. Setliff contends that the trial court erred in charging the jury as to an "egg shell plaintiff" and by charging aggravation. He argues that the charges "unduly emphasized particular matters by singling them out and giving them undue prominence of Plaintiff's position over Defendant's." Setliff further claims that the charges may have confused the jury because "[t]here was no evidence in the record to show Plaintiff/Appellee Kelly Littleton was an 'egg shell' plaintiff."

The record belies these claims. Having read the charge as a whole, we find no undue emphasis on the two instructions. Among other charges, the trial court properly instructed the jury as to the plaintiff's burden of proof, the general principles of negligence, direct

---

[5] *Sanders v. Moore*, 240 Ga. App. 730, 731 (1) (524 SE2d 780) (1999).

[6] *Tuggle v. Helms*, 231 Ga. App. 899, 901-902 (2) (499 SE2d 365) (1998).

[7] *Gray v. Elias*, 236 Ga. App. 799, 802 (513 SE2d 539) (1999).

[8] *Moore v. Sinclair*, 196 Ga. App. 667, 672 (6) (396 SE2d 557) (1990).

and proximate causation, and damages. Moreover, the defense apparently tried to attribute Littleton's knee problems to an origin other than the auto accident and to a combination of preexisting conditions and degenerative problems. Joseph C. Tatum, M.D., the board-certified orthopedic surgeon who testified for the defense and read her initial MRI as not showing a tear, testified that he saw "an abnormal signal in that meniscus" and "a little area of degeneration," but no tear. Dr. Tatum also testified that "a tear in the medial meniscus near the lateral horn" could be caused by sports activities including tennis or by a pivoting or twisting type of motion. And, Dr. Branch had conceded that "[i]t is also possible that she has a genetic tendency to get problems with her knees." Since a charge may be given when there is slight evidence to sustain it, and here there is evidence to support both charges, we find no error. See *King v. Turner*.[9]

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED DECEMBER 15, 2003.

*Ambadas B. Joshi*, for appellants.
*Moraitakis, Kushel & Pearson, Arnold E. Gardner*, for appellees.

---

[9] *King v. Turner*, 255 Ga. App. 56, 57 (564 SE2d 463) (2002).