A04A1250. THE COMMUNITY BANK v. HANDY AUTO PARTS, INC.
(607 SE2d 241)

MIKELL, Judge.

The Community Bank (the "Bank") appeals the jury verdict in favor of Handy Auto Parts, Inc. ("Auto Parts"), in this action involving breach of contract, conversion, and damage to property. On appeal, the Bank challenges the trial court's denial of its motions for directed verdict on Auto Parts's claims for conversion and damage to property and the jury instructions. We affirm.

"The standard of review of a trial court's denial of a motion for a directed verdict is the 'any evidence' standard."[1]

---

[1] (Citation, punctuation and footnote omitted.) *Patton v. Turnage*, 260 Ga. App. 744, 746 (2) (580 SE2d 604) (2003).

> In determining whether the trial court erred by denying [appellant's] motions for a directed verdict . . . , this court must view and resolve the evidence and any doubt or ambiguity in favor of the verdict. A directed verdict . . . is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, *demands* a certain verdict.[2]

So viewed, the evidence shows that in 1991, Ray Burnett purchased a 90-acre automobile salvage yard in Loganville, on which he opened Auto Parts. As a part of the sale, Burnett purchased the land, as well as the cars on the yard, the inventory, equipment, and ongoing business. In 1995, one of Auto Parts's customers, Gary Dean, approached Burnett about purchasing the business. Burnett and Dean agreed to a 25-year lease agreement with an option to purchase, which provided that Dean would pay monthly rent of $18,684.75. Additionally, Burnett sold Dean the cars, trucks, and parts on the premises for $100,000. The land, equipment, shelving, and tools remained the property of Auto Parts.

In June 2000, Burnett learned that Dean had been arrested for operating a "chop shop" and that the business had closed. On June 19, 2000, Burnett met the officer in charge of the investigation at the salvage yard. Stanley Kelly and Jerry Johnson, both of whom worked for the Bank, also attended the meeting. Kelly and Johnson informed Burnett that Dean had obtained a loan from the Bank and pledged all of the property and equipment as collateral. Burnett informed them that Dean only had a lease and did not own anything other than the cars. Kelly and Johnson asked to leave the inventory on the property until they could liquidate it. Burnett replied that they could do so if they paid rent, and they agreed. The Bank's representatives secured the property with locks owned by the Bank and departed with the only keys.

On July 25, 2000, Burnett sent a certified letter to the Bank in which he stated that its first month's rent of $18,684.75 was due on August 1, 2000, that the rent would be considered delinquent after the fifth of the month, and that a late penalty of ten percent would be assessed after that time. The Bank received the letter but did not respond. After four additional months passed, Burnett visited Kelly at the Bank and told him the Bank owed $82,000 in rent, which Kelly refused to pay. Burnett told the Bank that it could not conduct a sale on his property without paying the rent it owed.

---

[2] (Citations and punctuation omitted; emphasis in original.) *Southern Store & Restaurant Equip. Co. v. Maddox*, 195 Ga. App. 2, 3 (1) (392 SE2d 268) (1990).

The Bank sought a temporary restraining order against Burnett and Auto Parts, which was granted on January 9, 2001. Pursuant to the order,[3] Burnett was not allowed to interfere with the sale, which would be held on January 11, 2001. Burnett testified that he understood from the hearing that only the cars and parts would be sold in the sale. Burnett attended the sale and learned that the Bank was selling his equipment. He confronted Johnson, who ignored his concerns. Burnett left the premises, and the Bank sold everything on the property.

On May 15, 2001, Auto Parts's counsel notified the Bank that it had elected to terminate the Bank's tenancy and gave it 60 days to vacate the premises. The Bank did not respond. On August 24, 2001, Auto Parts filed a motion for writ of possession, or in the alternative, to compel the Bank to pay rent into the court registry. The writ of possession was granted on October 17, 2001. Auto Parts filed the instant action against the Bank on March 18, 2002.

1. The Bank argues that the trial court erred by denying its motion for directed verdict as to Auto Parts's conversion claim. We disagree.

The Bank contends that Auto Parts did not prove its ownership of the allegedly converted items. This assertion is incorrect. The bill of sale under which Auto Parts acquired the salvage yard and all of the items sold in conjunction therewith was introduced into evidence. Additionally, the bill of sale between Burnett and Dean, wherein Dean purchased only the salvage cars, trucks, and parts on the premises was also admitted. Even in the absence of these documents, however, in a conversion case, although some documentation of ownership may be the best evidence thereof, "we cannot disregard the fact that [Burnett's] testimony as to ownership, admitted without objection, is some evidence of his ownership sufficient to satisfy [the] any evidence requirement and thereby bar a directed verdict for [the Bank] based on this issue."[4] Here, Burnett introduced a list of the items that he owned that were sold by the Bank and testified as to his ownership and the value of each item. Defense counsel did not object. Therefore, there was sufficient evidence of ownership to leave this issue to the jury.

Next, the Bank argues that its motion for directed verdict should have been granted because it acquired possession of the items under legal process. "This court, however, will not consider arguments

---

[3] The order also directed the Bank to provide Burnett with an accounting of the sale and required that the net proceeds from the sale be deposited into the court registry.

[4] (Punctuation omitted.) *Outdoor Systems v. Woodson*, 221 Ga. App. 901-902 (473 SE2d 204) (1996), quoting *Herston v. Locke*, 160 Ga. App. 120-121 (1) (286 SE2d 349) (1981).

neither raised nor ruled on in the trial court and that are asserted for the first time on appeal. A party cannot abandon an issue in the lower court and then argue that issue on appeal."[5] The record shows that this argument was not raised below.

Finally, the Bank argues that Burnett's valuation of the items was speculative and could not serve as the basis for the judgment. We disagree. We also note that the Bank fails to cite any authority in support of its argument, and that it did not object to Burnett's qualifications to testify as to the valuation of the property.

We have held that "[t]he measure of damages where property has been converted is its market value at the time of the conversion. One need not be an expert or dealer in the article in question but may testify as to its value if he has had an opportunity for forming a correct opinion."[6]

> The owner of property is considered to be qualified to state his opinion as to value. . . . [I]n order to have probative value, [the opinion] must be based upon a foundation that the witness has some knowledge, experience or familiarity with the value and he must give reasons for the value assessed and also must have had an opportunity for forming a correct opinion. Whether a witness has established sufficient opportunity for forming a correct opinion or has stated a proper basis for expressing an opinion is a decision to be made by the trial court, and this decision will not be disturbed absent an abuse of discretion.[7]

Burnett testified that he was familiar with the items because he purchased them or bought similar items during his operation of Auto Parts. Furthermore, the figures at which he arrived were based on the value of the items in a used condition. We find no abuse of discretion in the trial court's decision to admit Burnett's valuation testimony. We note, too, that "[t]he question of the value of property is peculiarly one for the jury. Jurors are not required to accept as correct opinion evidence of value even where there is no other evidence of facts and data upon which the jury might base an

---

[5] (Punctuation and footnotes omitted.) *Aukerman v. Witmer*, 256 Ga. App. 211, 218 (3) (568 SE2d 123) (2002).

[6] (Citation and punctuation omitted.) *Loggins v. Mitchell*, 201 Ga. App. 358, 359 (1) (411 SE2d 98) (1991).

[7] (Citations and punctuation omitted.) *Getz Svcs. v. Perloe*, 173 Ga. App. 532, 536-537 (4) (327 SE2d 761) (1985).

independent conclusion."[8]

2. The Bank argues that the trial court erred by denying its motion for directed verdict on Auto Parts's property damage claim because Auto Parts did not prove that the damage was proximately caused by the Bank. We disagree and find that there was evidence in the record from which the jury could have determined that the Bank damaged Auto Parts's property.

Auto Parts alleged in its complaint that the Bank caused damage to the permanent structures that were erected on the property. The record reflects that the Bank had exclusive possession of the property from June 2000 until Burnett received the writ of possession on October 17, 2001. Photographs of the property which were taken before June 19, 2000, when the bank obtained possession of the property, were admitted into evidence with no objection. Also admitted were photographs of the damage to the property that were taken in March 2001 while the Bank was in the process of removing items sold at the auction and several pictures of the condition of the inside of the buildings on the property after Burnett obtained his writ of possession in October 2001.

Burnett testified about the damage to the fences, the electrical system, and the inside of the buildings during the trial. He also testified that he notified the Bank about the damage to the fencing on the property. During the time period in question, the only other entity given access to the property was Hudson and Marshall Auction Company, which the Bank hired to conduct the auction. Utilizing the "any evidence" standard,[9] we find the trial court's denial of the Bank's motion for directed verdict on this issue was proper as the jury could have inferred from the evidence that the Bank damaged the property.

The Bank also argues that the evidence as to the value of the damage to the property was hearsay and should not have been admitted. Conversely, the record shows that Michael Downie, the operations manager for a company that "does clean up and removal of junk," testified that he prepared an estimate for Burnett outlining the cost to remove several items and replace the damaged fencing. The estimate was admitted into evidence with no objection from the defense. The total estimate given by Downie was approximately $17,000. Therefore, the Bank's argument that the estimated value of the property damage constituted inadmissible hearsay lacks merit.

3. In its final enumeration of error, the Bank argues that the trial court erred by failing to charge the jury as to circumstantial evidence

---

[8] (Punctuation and footnote omitted.) *Young v. Faulkner*, 251 Ga. App. 847, 848 (555 SE2d 221) (2001).

[9] *Patton*, supra.

and speculative damages and that the failure to so charge was harmful as a matter of law, pursuant to OCGA § 5-5-24 (c). We disagree.

OCGA § 5-5-24 (a) provides that "in all civil cases, no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The only exception to this rule, which is stated in OCGA § 5-5-24 (c), applies only

> where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not. To avoid emasculating the rule that civil litigants must distinctly state their grounds for objection, this Court has held that OCGA § 5-5-24 (c) must be strictly construed and that instances in which subsection (c) applies are rare. To constitute harmful error within the meaning of this subsection, an erroneous charge or failure to charge must result in a gross injustice, such as to raise a question as to whether the appellant has been deprived of a fair trial.[10]

The Bank readily admits that it failed to request charges on circumstantial evidence and speculative damages and did not object to the charge given by the trial court. We cannot say that the trial court's failure to give the charges, sua sponte, created such a "gross injustice" as to deprive the Bank of a fair trial.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 29, 2004.

*Donald W. Osborne*, for appellant.

*Webb, Tanner & Powell, Steven A. Pickens, Matthew P. Benson*, for appellee.

---

[10] (Citations, punctuation and footnotes omitted.) *Setliff v. Littleton*, 264 Ga. App. 711, 714 (2) (592 SE2d 180) (2003).