A05A2253. STINCHCOMB et al. v. WRIGHT et al.

(628 SE2d 211)

MILLER, Judge.

Corporate homebuilders Ray M. Wright d/b/a Ray Wright Homes, Inc., Ravin Homes, Inc., and Chris Dixon & Associates, Inc. (collectively, the "Builders") and Dan V. Stinchcomb ("Stinchcomb"), a real estate developer, entered into a contract under which Stinchcomb agreed to sell the Builders 116 lots in a Fayette County subdivision (the "sale contract"). As consideration, the Builders paid Stinchcomb $10,000 in earnest money. In January 2000, the Builders purchased 71 of the lots. The terms obligating the Builders to purchase the remaining forty-five lots (the "remaining lots") has been the subject of litigation since that time, on one prior occasion reaching this Court. See *Ray M. Wright, Inc. v. Stinchcomb*, 259 Ga. App. 212 (576 SE2d 566) (2002) ("*Wright I*"). There we reversed the trial court's grant of summary judgment for Stinchcomb, finding jury questions remaining as to Stinchcomb's alleged breach of the sale contract. Id. at 214-215.

The Builders voluntarily dismissed the case upon its remittitur to the trial court, later refiling it as the underlying complaint. The Builders realleged counts for specific performance of the sale contract or, in the alternative, breach of the agreement, conversion, attorney

fees, and punitive damages. They also alleged a new count for fraudulent conveyance and added as a party Victor Holdings, LLC ("Victor Holdings"), an entity organized by Stinchcomb and to which he conveyed the remaining lots by quitclaim deed. Stinchcomb timely answered and counterclaimed for breach of contract and attorney fees. On cross-motions for summary judgment, the trial court denied Stinchcomb summary judgment on the Builders' claims and granted summary judgment to the Builders on Stinchcomb's counterclaims.

Following a trial, the jury returned its verdict finding that Stinchcomb breached the sale contract; fraudulently conveyed the remaining lots to Victor Holdings; and converted the Builders' earnest money. By its award, the jury required Stinchcomb to sell the Property to the Builders under the terms of the sale contract, and awarded the Builders $100,000 as attorney fees and $5 as punitive damages. The trial court thereafter entered judgment on the verdict, ordering specific performance of the sale contract and nullifying Stinchcomb's quitclaim deed to Victor Holdings.

Stinchcomb appeals from the trial court's judgment on the jury's verdict and its order denying his motion for judgment notwithstanding the verdict or, alternatively a new trial. After careful review, discerning no error, we affirm.

1. Stinchcomb challenges the grant of summary judgment to the Builders on his counterclaim for breach of contract. Specifically, he argues that this Court reversed the grant of summary judgment on the "identical issue" in *Wright I* when the Court held that (a) issues of fact remained on the question whether the Builders breached the contract by failing to timely tender the purchase price, and that (b) the jury should have been able to consider his claim that the Builders breached the mutual release term of the sale contract. We disagree.

> On appeal from the grant of summary judgment[,] this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. [Cits.]

*Youngblood v. Gwinnett Rockdale Newton Community Svc. Bd.*, 273 Ga. 715, 717-718 (4) (545 SE2d 875) (2001).

(a) In *Wright I*, this Court reversed the grant of summary judgment to Stinchcomb, finding that there existed

> material issues of fact on the question of whether Wright breached the parties' agreement by failing to make a timely tender of the purchase price for the lots in the second phase

> or whether Stinchcomb breached the agreement by not readying the lots for sale by obtaining the city's approval of a final plat.

Id. at 214. As to the grant of summary judgment for the Builders in this case, however, the trial court based its ruling on Stinchcomb's failure to present any evidence of consequential damages or of damages contemplated by the parties at the time of contracting, not on the same issues addressed in *Wright I*. See *Exec. Constr., Inc. v. Geduldig*, 170 Ga. App. 560, 561 (1) (317 SE2d 564) (1984) (damages arising naturally out of breach of contract and those contemplated by the parties when the contract made are recoverable as consequential damages). Consequently, even if the Builders breached the sale contract, Stinchcomb failed to provide any evidence to support damages sought in his counterclaim. As a result, the grant of summary judgment on the counterclaim was not precluded by our holding in *Wright I*.

(b) Stinchcomb also contends that summary judgment for the Builders on his counterclaim was in error, arguing that jury questions remain regarding whether the Builders breached a mutual release agreement entered by the parties. However, because the mutual release does not cover the remaining lots, we find that the trial court did not err in its grant of summary judgment to the Builders.

Stinchcomb points out that the mutual release, by its own terms, applied to "Stonebriar West, Unit One, Phase Two." Upon examining the mutual release as the highest and best evidence of the intent of the parties (see *Livoti v. Aycock*, 263 Ga. App. 897, 901-902 (2) (590 SE2d 159) (2003) (first rule of contract construction is to look to four corners of the contract to determine the intent of the parties)), we find that "Unit One" as used in the mutual release refers only to the 71 lots that the Builders had already purchased from Stinchcomb. The mutual release also identifies "Stonebriar West, *Unit One*, Phase Two" (emphasis supplied), as the land depicted on a plat recorded on October 28, 1999 in Plat Book 32, Page 146, and the evidence of record shows that this is Stinchcomb's final plat of the first 71 lots situated in Land Lot 96. The mutual release also provides that the Builders "have purchased *all the lots in* **STONEBRIAR WEST**, *UNIT ONE*, **PHASE TWO** subdivision. . . ." (Emphasis supplied.) This further establishes that such term extends to the 71 lots initially sold to the Builders but not to the remaining lots.

Stinchcomb argues that "Stonebriar West, Unit One, Phase Two" refers to the entire property of 116 lots, relying on certain affidavits of the Builders. Parol evidence, however, is admissible to vary the terms of the mutual release only to the extent it is ambiguous. OCGA

§ 13-2-2; *Livoti*, supra, 263 Ga. App. at 902. We have found no ambiguity in the mutual release.

Given the foregoing, the trial court properly granted summary judgment to the Builders on Stinchcomb's counterclaim.

2. Stinchcomb contends that the trial court erred in awarding specific performance of the sale contract, attorney fees, and punitive damages since the jury failed to award compensatory damages. Stinchcomb also challenges the award of specific performance in that the sale contract failed to sufficiently set out a legal description of the remaining lots. We find these arguments to be without merit.

(a) Stinchcomb's argument that the Builders must recover monetary damages in order to obtain specific performance is incorrect. In fact, the rule is the reverse. "In order to entitle one to recover damages in lieu of specific performance, the complainant must prove his right to the latter remedy. [Cits.]" *Clayton v. Deverell*, 257 Ga. 653, 654 (1) (362 SE2d 364) (1987). The Builders were entitled to pursue the alternate remedies of specific performance and damages in the same action. Id. at 654 (3). Further, the Builders showed that the sale contract was in writing, signed by the parties, was certain and fair, for adequate consideration and capable of being performed so that it was specifically enforceable.

In this regard, Stinchcomb also raises the claim that any award of specific performance, whether by jury verdict or entry of judgment thereon, was impermissible for want of evidence showing that the contract was fair and equitable. Inasmuch as this argument is raised for the first time on appeal, we need not consider it. See, e.g., *Community Bank v. Handy Auto Parts*, 270 Ga. App. 640, 642-643 (1) (607 SE2d 241) (2004) (This Court will not consider arguments neither raised nor ruled upon in the trial court.). We point out, however, that there is no evidence that the sale contract was not for fair and adequate consideration. Such consideration is measured at the time the parties enter into a contract, not at the time of any alleged breach. *Whitehead v. Dillard*, 178 Ga. 714, 717 (174 SE 244) (1934). An appellate court will not reject the contract price as inadequate, "unless there is such a gross disparity as to shock the moral conscience and to amount in itself to evidence of fraud." Id.

Under these circumstances, we will not disturb the trial court's award of specific performance. *Laseter v. Brown*, 251 Ga. 179, 180 (2) (304 SE2d 72) (1983). It follows that the jury's verdict "requiring" Stinchcomb to sell the Property to the Builders under the terms of the sale contract was proper.

Stinchcomb's argument that the trial court erred in granting the Builders their attorney fees and punitive damages due to the jury's failure to award compensatory damages is likewise without merit.

A decree of specific performance will support an award of attorney fees. *Golden v. Frazier*, 244 Ga. 685, 687 (2) (261 SE2d 703) (1979). Punitive damages may be awarded upon a finding of conversion or fraudulent conveyance. *Cavin v. Brown*, 246 Ga. App. 40, 43 (2) (b) (538 SE2d 802) (2000); *Felker v. Chipley*, 246 Ga. App. 296, 298 (2) (540 SE2d 285) (2000). Since the Builders proved their claims of fraudulent conveyance and were awarded specific performance, the trial court's award of attorney fees and punitive damages was proper.

(b) Stinchcomb argues that the sale contract was unenforceable because the preliminary plat intended as the "key" to identifying the Property was not properly identified and failed to provide an adequate legal description. Notwithstanding the foregoing, the sale contract describes the entire tract to be conveyed as "all that tract of land lying and being in Land Lot 96 & 6 of the 5th & 7th District . . . of Fayette County, Georgia and being known as . . . Magnolia Ridge Subdivision. . . ." Since a plat in conjunction with extrinsic evidence may be used as a key to describe the specific bounds of land otherwise described in a contract (see *Ga. Loan & Trust Co. v. Dyer*, 233 Ga. 957, 958 (213 SE2d 864) (1975)), the issue is whether the Preliminary Plat of the Magnolia Ridge Subdivision ("Magnolia Ridge Plat" or "Plat") and testimony at trial adequately described the land that Stinchcomb agreed to sell. For the reasons that follow, we hold that the Plat and trial testimony were sufficient to do so.

Special Stipulation 4 to the sale contract referred to the Magnolia Ridge Plat as being attached to the contract and by reference being incorporated into the contract. On its face, the Plat is prominently labeled, "Preliminary Plat of: Magnolia Ridge, A Planned Unit Development." Stinchcomb, among other witnesses, described the Plat, later termed Stonebriar West, as the land he agreed to sell pursuant to the sale contract. As a signatory to the sale contract, Stinchcomb cannot complain that the Magnolia Ridge Plat was not attached to and a part of the contract at the time of its execution. See *Holt & Holt, Inc. v. Choate Constr. Co.*, 271 Ga. App. 292, 294 (1) (609 SE2d 103) (2004) ("[O]ne who signs a contract is presumed to know its contents.") (citations and punctuation omitted). Since Stinchcomb also testified that the boundaries of the Plat had never changed, his suggestion of ambiguity is invalid as well.

Moreover, Stinchcomb's conveyance of the initial 71 lots belies his claim of ambiguity as to the eastern boundary of the entire Plat. *Scott v. Lester*, 242 Ga. 730, 731 (251 SE2d 257) (1978). Since the Property otherwise shares a common boundary with the initial 71 lots in the west and all remaining boundaries are clearly set out by distance and bearing on the face of the Plat, we find no ambiguity in that regard. Accordingly, the award of specific performance was not

unenforceable due to an insufficient description of the property to be conveyed. See *Ga. Loan & Trust Co.*, 233 Ga. at 958.

3. Stinchcomb contends that the trial court erred in failing to charge the jury on the definition of the word "lot" found in Fayetteville and Fayette County zoning ordinances. He points out that the sale contract required the Builders to close on the remaining lots within nine months of the date on which the initial lots were purchased without defining the term "lots." Stinchcomb argues that the Fayetteville and Fayette County zoning definitions of a "lot" unambiguously evidence a duty of the Builders to close on the remaining lots under the sale contract even without an approved final plat. This argument is without merit.

It was for the jury to determine whether or not the word "lot" as used in the sale contract required Stinchcomb to convey final-platted subdivision lots. In *Wright I*, we held that parol evidence of trade usage and custom was admissible to assist the jury in making such a determination. *Wright I*, supra, 259 Ga. App. at 214. By parol evidence, the Builders established that the building industry considers a "lot" to be a parcel of land that is recorded on a *final* subdivision plat approved by the government. See OCGA § 44-3-221 (9) (" 'Lot' means any plot or parcel of land . . . designated for separate ownership and occupancy shown on a recorded subdivision plat for a development. . . ."). While Stinchcomb read his definitions from the Fayetteville and Fayette County zoning ordinances into the record, he introduced no evidence to the effect that the building industry uses the word "lot" in the same context as the zoning ordinances. Since the charge Stinchcomb requested was not tailored to the pleadings, the law, and the evidence, its omission from the jury charge was proper. *Hayden v. Sigari*, 220 Ga. App. 6, 10 (5) (467 SE2d 590) (1996).

4. In his final enumeration of error, Stinchcomb contends that the trial court erred by denying his motion for judgment notwithstanding the verdict because there was no evidence that he fraudulently conveyed the Property to Victor Holdings. We disagree.

"It is well established that whether a deed was made with the intent to . . . defraud . . . is a question of fact for the jury. . . ." *Langston v. Allen*, 268 Ga. 733 (1) (493 SE2d 401) (1997). Here, Stinchcomb's engineer and surveyor testified that Stinchcomb transferred the remaining lots to Victor Holdings to avoid the sale to the Builders under the contract. Stinchcomb transferred the Property in the narrow time window that separated the Builders' dismissal of their original complaint and the refiled complaint at issue in this case. Stinchcomb has offered conflicting explanations for the transfer over the course of the litigation. See *Gwinnett Property, N.V. v. G+H Montage GmbH*, 215 Ga. App. 889, 892 (1) (453 SE2d 52) (1994) (conflicting explanations can justify a finding of fraudulent intent).

He has retained possession of the property, notwithstanding the fact that he rents the property from Victor Holdings and continues to personally pay taxes on it. See *Haynes v. Blackwell*, 232 Ga. 430, 434 (3) (207 SE2d 66) (1974) (continued possession by the grantor is prima facie evidence of fraud). Moreover, there is evidence that Stinchcomb conveyed the Property, valued at over $1.2 million, for an alleged consideration of $10. See *Hadlock v. Anderson*, 246 Ga. App. 291, 293 (1) (540 SE2d 282) (2000) (taken in connection with suspicious circumstances, an inadequate price raises a "vehement presumption of fraud"). The evidence raised questions of fact for the jury and authorized its finding of fraudulent conveyance. Under the evidence, the trial court did not err in denying Stinchcomb's motion for judgment notwithstanding the jury's verdict on this account. *Langston*, 268 Ga. at 733 (1).

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 8, 2006.

*Holland & Knight, Harold T. Daniel, Jr., Laurie W. Daniel, Tiffani Z. Moody, Lindsey G. Churchill, Kelli S. Lott*, for appellants.
*Bischoff & White, James E. Bischoff, Carlock, Copeland, Semler & Stair, John C. Rogers, Johannes S. Kingma*, for appellees.