### A08A2361. SANTANIELLO v. BENNETT.

(675 SE2d 282)

JOHNSON, Presiding Judge.

After Richard Santaniello's purchase of a business owned by Lester Lamar Bennett IV failed to close, Santaniello sued Bennett, Georgia Investment Properties Enterprises, Inc. (the "Brokerage Company"), and Robert Johnson, who owned the Brokerage Company, seeking to recover the $200,000 he paid as earnest money for the purchase of the business. Bennett filed a motion for summary judgment, which was granted by the trial court. Because a jury question remains as to whether an employee of the Brokerage Company, as Bennett's agent, waived the requirement that Santaniello purchase the business by the closing date, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] "On appeal from the grant or denial of summary judgment, we

---

[1] *Ray M. Wright, Inc. v. Stinchcomb*, 259 Ga. App. 212, 214 (576 SE2d 566) (2002).

YALE LAW LIBRARY

conduct a de novo review, construing the evidence and all reasonable inferences most favorably to the nonmoving party."[2]

So viewed, the record shows that Bennett told his friend Jeffery Singletary, who was an employee of the Brokerage Company, that he was interested in selling his recycling business in Waycross. On November 4, 2004, Bennett and the Brokerage Company entered into an exclusive brokerage agreement, pursuant to which Bennett agreed to pay the Brokerage Company a commission of ten percent of the sales price if the Brokerage Company procured a purchaser who entered into an enforceable contract for the sale of the business. Singletary was named in the agreement as the "listing agent" for the sale.

Santaniello became interested in purchasing the business after his friend saw an advertisement placed by the Brokerage Company in a recycling periodical. On May 6, 2005, Santaniello met with Singletary and visited the property where the business was located. Santaniello subsequently entered into an agreement to purchase the business and paid $200,000 as earnest money.

The purchase agreement provided that Santaniello would pay $2 million at closing in exchange for the real property on which the business was located, the business' name and inventory, and equipment and other personal property owned by the business. The agreement further provided that the closing should occur on or before July 10, 2005, except that either party could extend the closing date by seven days under certain conditions.

In early June 2005, Santaniello contacted Singletary to report that the Environmental Protection Agency had ordered one of his companies in New Jersey to complete a site remediation. Santaniello requested more time to close the purchase of Bennett's business so that he could focus on the remediation. After speaking with Bennett, Singletary informed Santaniello that he could have additional time to close. Santaniello deposed that Singletary told him additional time was "fine as long as . . . you agree we're going to go forward with this . . . after you get your problem straightened up." Singletary claimed that he told Santaniello that he could have a 30-day extension, but he also admitted he was "flexible" on the closing date and that he told Santaniello that "[i]f you're not ready to close, we'll put it off as long as we can. . . ."

Singletary and Santaniello continued to speak with each other numerous times. In mid-July 2005, Santaniello spoke with both Singletary and Johnson about the progress of the remediation, and Santaniello invited them to New Jersey to visit the site. While

---

[2] *Miller v. Coleman*, 284 Ga. App. 300 (643 SE2d 797) (2007).

Bennett and Singletary now claim that Santaniello failed to make satisfactory progress toward obtaining a loan to purchase Bennett's business during this period, Santaniello claims that he sent his financial statements to the Small Business Administration to begin the loan process and told Singletary that he was going to then "focus all [his] energies" on the remediation. According to Santaniello, Singletary continued to encourage him to "[g]o ahead and deal with what you've got to deal with so you can move on with a clear head."

On August 5, 2005, Bennett's attorney sent a letter to Singletary acknowledging "some sort of 'verbal extension'" to provide an additional 30 days for closing and informing Singletary that if the closing did not take place by August 10, 2005, Bennett intended to demand the $200,000 being held as earnest money. Despite his numerous prior conversations with Santaniello, Singletary did not contact Santaniello about the letter, but merely forwarded it to Johnson. Singletary did not know if Johnson forwarded the letter to Santaniello.

On August 22, 2005, Santaniello called Singletary to let him know that he had almost completed his remediation work in New Jersey and was ready to close on his purchase of Bennett's business. However, Singletary informed him that the agreement had expired and that they were "working with another buyer." Santaniello then brought this action to recover his earnest money.

We first note that the settled public policy of this state disfavors forfeitures for breach of contract. "While forfeitures are not unlawful, the law does not favor them, and all ambiguities in a contract are to be resolved against their existence."[3]

It is also well settled that a seller may waive timely performance of a contract, either orally or by conduct, even where the contract provides a specific date for performance and states that time is of the essence.[4] Whether such waiver took place is an issue for the trier of fact.[5] Here, the deposition testimony of both Santaniello and Singletary creates a genuine issue of material fact as to whether the closing date provision of the purchase agreement was orally waived and whether a new closing date was set.

OCGA § 10-6-51 provides that a "principal shall be bound by all the acts of his agent within the scope of his authority." In an attempt to avoid being bound by any waiver granted by Singletary, Bennett denies that Singletary was his agent and claims that Singletary was actually an agent of Santaniello. The evidence, however, shows that

---

[3] (Citation and punctuation omitted.) *A. L. Williams & Assoc. v. Faircloth*, 259 Ga. 767, 767-768 (1) (b) (386 SE2d 151) (1989).

[4] *Smothers v. Nelson*, 246 Ga. 216, 218 (1) (271 SE2d 137) (1980).

[5] *Ray M. Wright, Inc.*, supra at 215.

(a) Bennett and Singletary were friends prior to the transaction, (b) Bennett and Singletary "mutual[ly] approach[ed]" each other about working together to sell the business, (c) Bennett entered an exclusive brokerage engagement agreement with Singletary's employer, (d) Singletary was named as Bennett's listing agent for the sale, (e) Bennett never had a conversation with Santaniello after the date the purchase agreement was signed, and (f) Bennett knew that Singletary "may have" given Santaniello "some sort of 'verbal extension' " to postpone the closing date.

Such evidence was sufficient to create a jury question as to whether Singletary had actual or apparent authority to bind Bennett to a waiver of the closing date requirement and, even if Singletary exceeded such authority, whether Bennett ratified Singletary's act by acknowledging the grant of "some sort" of extension.[6] Because factual issues remain as to waiver of the closing date, the trial court erred in granting summary judgment to Bennett.[7]

*Judgment reversed. Barnes and Phipps, JJ., concur.*

DECIDED MARCH 10, 2009.

*Dillard & Dillard, Stephen G. Dillard*, for appellant.
*Thomas & Settle, Ronald B. Thomas*, for appellee.

---

[6] See *Hutsell v. U. S. Life Title Ins. Co. &c.*, 157 Ga. App. 845, 847 (2) (278 SE2d 730) (1981) ("[P]rincipal is estopped to deny that the agent has such authority which, as reasonably appears or is deducible from the conduct of the [principal and agent], the agent apparently has."); *Hopkins & Co. v. Armour & Co.*, 8 Ga. App. 442, 444 (69 SE 580) (1910) (the scope of agent's authority to bind principal is generally a question for the jury).

[7] See *Edwards v. McTyre*, 246 Ga. 302, 303 (3) (271 SE2d 205) (1980).