In the Supreme Court of Georgia

Decided: October 5, 2015

S15A0820. BAGWELL v. TRAMMEL et al.

THOMPSON, Chief Justice.

Following a bench trial in this action arising out of a joint venture contract between appellant Thomas Bagwell and appellees Bobby and Oretta Trammel (the "Trammels"), the trial court denied Bagwell's claim for specific performance of the contract but granted his claims for an equitable partition of real property jointly owned by the parties and dissolution of the joint venture. Bagwell challenges the trial court's final order on several grounds, and for the reasons that follow, we affirm.

The record shows that in January 2000, Bagwell and the Trammels entered into a Joint Venture Agreement (the "Agreement"), which created an entity known as Etowah Ventures. As part of the Agreement, Bagwell agreed to cancel notes to him that were owed or guaranteed by the Trammels and valued in excess of $1,875,000. In exchange, the Trammels conveyed to Bagwell a

one-half undivided interest in approximately 103 acres of real estate to be held as joint tenants in common. The Agreement further provided that legal title to the joint venture property would be held by either or both of the Trammels in trust for the benefit of Etowah Ventures and that upon the sale of the joint venture property, Bagwell would be entitled to be paid the original principal amounts of the cancelled notes, as well as the interest that already had accrued and interest that would have accrued under the cancelled notes. Any additional proceeds were to be evenly divided between Bagwell and the Trammels.

By August 2002, none of the joint venture property had been sold and the Trammels were in need of additional monies, so the parties entered into a second contract (the "Redemption Agreement") which amended the original Agreement. Pursuant to the terms of the Redemption Agreement, Bagwell agreed to advance $600,000 to the Trammels against their share of future sales proceeds from the sale of joint venture property and a new formula (the "Redemption Formula") was established for the redemption of Etowah Ventures which enhanced Bagwell's equity position by entitling him to a greater percentage of future sales proceeds.

By August 2004, approximately 73.6 acres of the joint venture property

2

had been sold and the Redemption Formula had been applied to distribute the proceeds from those sales, leaving unsold approximately 29 acres of joint venture property. On September 1, 2004, however, the Trammels transferred the remaining 29 acres by warranty deed to their sons. Bagwell discovered the transfer and immediately filed a title affidavit to dispute the validity of the transfer. Six years later, while still negotiating with the Trammels' sons to reconvey the property for the benefit of Etowah Ventures, Bagwell filed the complaint in this action seeking, inter alia, a declaratory judgment, cancellation of the deed, a constructive trust, dissolution of the joint venture under OCGA § 14-8-32 (a) (3)-(5) of the Georgia Uniform Partnership Act, see OCGA § 14-8-1 et seq., and an accounting under OCGA § 14-18-22 (4) consistent with the Redemption Formula.

In May 2013, the Trammels' sons agreed to quitclaim the property back to their parents. Bagwell thereafter filed several amendments to his complaint reflecting the transfer of the property back to the Trammels to be held for the benefit of Etowah Ventures, eliminating those counts that had factually relied on the transfer of the property, and adding claims for an equitable dissolution and accounting of Etowah Ventures under OCGA § 23-2-70 (5) and according

to the terms of the Redemption Agreement, an equitable partitioning, OCGA §

44-6-140, and specific performance of the Redemption Agreement, see OCGA

§ 23-2-130.

After a three-day bench trial, the trial court entered a final judgment (1)

granting Bagwell's requests for an equitable accounting and equitable

partitioning and providing for the equitable dissolution of Etowah Ventures and

(2) directing that upon the sale of the joint venture property, the Trammels,

collectively, and Bagwell would each be entitled to one-half of the net sales

proceeds.[1]   In granting this relief, the trial court specifically held that the

---

[1] The trial court entered a contemporaneous order appointing a receiver to carry out the equitable accounting and partitioning, charging the receiver with

> overseeing the sale of the property [the "Joint Venture Property]' obtaining an appraisal of the property if necessary, obtaining a survey of the property if necessary, and ensuring that the property is partitioned and sold within a reasonable period of time and at the highest price available in the market.

> Upon the sale of the property, the Trammels are, collectively, entitled to fifty (50) percent of the net sales proceeds and Bagwell is entitled to fifty (50) percent of the net sales proceeds as an equitable accounting and partitioning of the dissolved joint venture.

See Waycross Military Ass'n v. Hiers, 209 Ga. 812, 813-814 (4) (76 SE2d 486) (1953) (holding that equitable partition may be accomplished through and by receivership). The trial court previously had granted summary judgment in favor of the Trammels on Bagwell's claims seeking dissolution of the joint venture under OCGA § 14-8-32 of the Georgia Uniform Partnership Act, an accounting under OCGA § 14-8-22 (4), and a constructive trust. Bagwell's remaining claims were either dismissed by him or rendered moot by the

4

Agreement operated as a valid deed under OCGA § 44-5-30 and that the Redemption Formula found in the Redemption Agreement and giving Bagwell an enhanced equity position did not govern the trial court's grant of equitable relief in this case. This appeal followed.

1. Bagwell in several enumerations of error argues that the trial court erred by denying his claim for specific performance of the Redemption Agreement insofar as it applied to the remaining 29 acres of joint venture property.

The record reflects the trial court's holding that Bagwell was not entitled to the equitable remedy of specific performance because what he was actually seeking in his complaint was to recover his interest in the value of the remaining 29 acres, and therefore, monetary damages available through the filing of a contract claim would have provided him with adequate compensation. Bagwell challenges the trial court's rulings regarding the availability and adequacy of legal damages on numerous grounds. We need not address these grounds, however, because our review of the record demonstrates an alternate basis for the trial court's determination that Bagwell failed to show his entitlement to the reconveyance of the 29 acres.

extraordinary remedy of specific performance.

As a general rule, a party to a contract may seek specific performance of a contract upon a showing that damages recoverable at law would not constitute adequate compensation for another parties' nonperformance. See OCGA § 23-2-130. The contract for which specific performance was sought in this case was the Redemption Agreement, a contract entered into for the purpose of "conclusively establishing their respective interests in [Etowah Ventures] by mutually adopting a formula and program of redemption which settles any and all issues between the parties and provides for a self[-]effectuating dissolution" of [Etowah Ventures] upon the sale of all of the joint venture property. The contract sought to be enforced, therefore, was one providing for the distribution of proceeds obtained by the joint venture following the future sale of certain real property, and the complaint filed sought application of that contract's Redemption Formula to the distribution of sales proceeds. The complaint, however, did not allege that there were in existence any proceeds from the sale of joint venture property that had not been paid to Bagwell. In fact, it was undisputed that the Redemption Formula had been applied to the distribution of proceeds from the sale of the first 73.6 acres of joint venture property and that

6

the remaining 29 acres had not yet been sold. There clearly could be no claim for specific performance when the time stated for the Trammels' performance of their obligations under the Redemption Agreement with regard to the remaining 29 acres had not yet arrived and the object of the contract, i.e., the sales proceeds, were not yet in existence. See Kingsdale Apartments, Inc. v. Board of Lights & Waterworks, 219 Ga. 49, 50 (131 SE2d 557) (1963) (petition for specific performance premature where time for performance has not yet arrived); Gilleland v. Welch, 199 Ga. 341 (3) (34 SE2d 517) (1945) (suit for specific performance brought before time for performance had arrived was premature); East Side Lumber & Coal Co. v. Barfield, 195 Ga. 505, 508 (24 SE2d 681) (1943) (plaintiff had no right to specific performance of contract where evidence showed impossibility of performance); Gabrell v. Byers, 178 Ga. 16, 21 (172 SE 227) (1933) ("It is well settled that a court of equity will not render a decree which is impossible of performance, or which the court has not power to enforce."). See also OCGA § 23-2-130 ("Specific performance of a contract, *if within the power of the party*, will be decreed, generally, whenever the damages recoverable at law would not be an adequate compensation for nonperformance." (Emphasis added)). We conclude, therefore, under the right

7

for any reason rule, that the trial court properly denied Bagwell's claim for specific performance. See Engram v. Engram, 265 Ga. 804, 807 (2) (463 SE2d 12) (1995) (affirming denial of claim for unjust enrichment under right-for-any-reason rule); Griffin v. Tift County, 242 Ga. 746, 747 (251 SE2d 262) (1978) (affirming dismissal of equitable petition under right-for-any-reason rule).

2. We similarly find no error in the trial court's determination that the original Agreement could be construed as a valid deed. Pursuant to OCGA § 44-5-30, a "deed to lands shall be an original document, in writing, signed by the maker, attested by an officer as provided in Code Section 44-2-15, and attested by one other witness." This statute, however, does not provide that unless so attested, a deed is void. In fact, a deed without witnesses is legal and binding between the parties themselves. See OCGA § 44-5-33 (no prescribed form is essential to the validity of a deed to lands); Hoover v. Mobley, 198 Ga. 68, 73 (31 SE2d 9) (1944); Johnson v. Jones, 87 Ga. 85, 89 (13 SE 261) (1891). See also Howard v. Russell, 104 Ga. 230 (30 SE 802) (1898) ("A deed to land, though not attested as required by law, conveys the title as against the grantor and his heirs.").

It is undisputed that within section two of the original, written Agreement

8

signed by the parties, the Trammels conveyed to Bagwell a one-half undivided interest in the joint venture property specifically described in the note attached to and incorporated by reference. Accordingly, we find no error in the trial court's ruling that this section of the Agreement operated as a valid deed granting Bagwell a one-half interest in the joint venture property.

3. As alternatives to his claim for specific performance, Bagwell sought an equitable partition of the remaining 29 acres and an equitable accounting and dissolution of Etowah Ventures. The trial court ruled in Bagwell's favor as to each of these claims and directed that upon the sale of the remaining joint venture property, Bagwell was entitled to one-half of the net sales proceeds. Bagwell argues that the trial court erred by refusing to apply the Redemption Formula to the distribution of these sales proceeds as that was the formula contractually agreed to by the parties.

In ruling on a claim for an equitable partition, a trial court has broad discretion to consider all of the circumstances that make a proceeding in equity more suitable and just, including the need to adjust the accounts or claims of the co-tenants. See OCGA § 44-6-140 (authorizing equitable partition "whenever the remedy at law is insufficient or peculiar circumstances render the proceeding

9

in equity more suitable and just); OCGA § 44-6-141 (court in equitable partition proceeding will "mold its decree to meet the general justice and equity of each cotenant"); Coker Properties v. Brooks, 278 Ga. 638, 640 (604 SE2d 766) (2004). See also 3A K. Morgan Varner III & Robert H. Turner III, Georgia Jurisprudence Property § 33:13 (courts of equity are empowered, among other things, "to settle the rights of collaterally interested parties brought into the proceedings as defendants, to protect the interest of absent parties presumed dead," and "to protect [by] appropriate decree the interest of all parties by unraveling complicated factual situations involving joint ownership of improvements, insolvency, foreclosure and purchase of assets, and the continuation of business"). Thus, while the Redemption Agreement may have remained a valid and enforceable contract between the parties, the trial court was not bound by its terms in making its equitable partition award.[2]

Instead, OCGA § 44-6-140 and OCGA § 44-6-141 granted the trial court the authority to adjust the accounts and claims of the parties as required by the

---

[2] To the extent a provision of the contract may have been nullified at all in this case, as suggested by the dissent, it was not nullified by the trial court's ruling. It was, instead, nullified by Bagwell's election to seek an early, equitable dissolution of the parties' joint venture rather than follow the terms of their contract.

circumstances, and more specifically, authorized the trial court to consider all of the circumstances, including any circumstances that occurred after the making of the contract or that may have led to the desire of one of the parties to seek an equitable partition rather than wait to enforce the contract. For instance, by seeking an equitable partition and a premature dissolution of Etowah Ventures, Bagwell acted contrary to the terms of the Redemption Agreement and sought to force the sale of the property at what the Trammels believed would be a substantially reduced price. The trial court was authorized, and indeed had the responsibility, to consider these facts, together with the terms of the Redemption Agreement and all of the other evidence presented at trial, when making its award. We find it clear from the trial court's final order, which expressly adopted that court's detailed factual findings from its order on summary judgment, that the trial court did so in this case.[3]

---

[3] The dissent incorrectly states that the trial court makes no mention of the Redemption Agreement in its final order. The trial court made factual findings in its order on summary judgment and these findings were expressly adopted into the trial court's final order. Included in the trial court's findings on motion for summary judgment is that court's recognition that the parties entered into the Redemption Agreement and that the Redemption Agreement (1) established their respective interests in Etowah Ventures by adopting the Redemption Formula and (2) provided for a self-effectuating dissolution of Etowah Ventures. The court in its summary judgment order also acknowledged the continuing validity of Redemption Agreement when it stated that Bagwell could seek legal remedies based on the parties' contracts to protect his interest in the joint venture property. Finally,

Accordingly, we find no abuse of the trial court's broad discretion in making its equitable award. Although the dissent would seek a more affirmative confirmation from the trial court that it considered the Redemption Agreement, it cites no legal authority imposing such a requirement upon the courts of this state. And even is there was such an obligation, the trial court's consideration of the circumstances in this case, including the existence of an enforceable contract between the parties that contemplated a continuing joint venture, is beyond reasonable dispute. The burden of establishing an abuse of the trial court's discretion on this issue rested upon Bagwell, and he has failed to meet his burden.

Judgment affirmed. All the Justices concur except Melton, J., who concurs in part and dissents in part.

---

the findings incorporated into the final order include an acknowledgment of the parties' intention when entering into their contracts that Etowah Ventures would continue to exist until all joint venture property was sold, the parties mutually agreed to termination of the joint venture, the death of one of the parties, or the impossibility of performance.

S15A0820. BAGWELL v. TRAMMEL, et al.

MELTON, Justice, concurring in part and dissenting in part.

While I agree with Divisions 1 and 2 of the majority opinion, I must respectfully dissent from Division 3. My problem is not with the majority's analysis in Division 3, but with the fact that the *trial court* employed none of this analysis when it decided, contrary to the terms of the parties' Redemption Agreement, that Bagwell and the Trammels were each entitled to one-half of the net sales proceeds from the sale of the Etowah Ventures property. Following the closing on the property, there was a subsequent meeting of the minds between the parties, consummated in a Redemption Agreement. The Redemption Agreement called for a 70/30 split in the sales proceeds from the sale of the Etowah Ventures property, rather than a 50/50 split as was imposed by the trial court. There is no question as to the validity of the parties' contract. Therefore, it is the key document to be considered with respect to the division of sales proceeds from the sale of the Etowah Ventures property. However, the trial court provided no analysis at all in its final order regarding the impact of the Redemption Agreement on the division of proceeds from the sale of the Etowah

Ventures property. That being the case, we have no way of knowing whether the trial court actually engaged in the necessary analysis to reach the result that it did here. I therefore do not believe that we can affirm the trial court's decision on the grounds stated by the majority. I believe that we must vacate the trial court's order and remand this case to the trial court with the direction that it analyze the impact of the Redemption Agreement on its equitable partition decision.

The trial court's decision to completely omit any actual analysis relating to the Redemption Agreement in its final order on the bench trial in this case is troubling, especially when one considers that the trial court itself recognized the importance of this agreement in its order on the Trammels' motion for summary judgment:

> [O]n August 31, 2002, Bagwell [and the Trammels] entered into [an] Agreement of Redemption of Joint Venture Interests (hereinafter "Redemption Agreement"). The purpose of the redemption Agreement was to 'conclusively establish their respective interests in Etowah Ventures by mutually adopting a formula and program of redemption which settles any and all issues between the parties and provides for a self effectuating dissolution in the future of Etowah Ventures. The parties to the Redemption Agreement stated . . . that upon the sale of the properties, the parties would divide the proceeds based upon a distribution formula through Etowah Ventures.

The trial court then goes on in its summary judgment order to state that

> Section Three of the Redemption Agreement is clear and
> unambiguous. It describes the self-effectuating dissolution of
> Etowah Ventures. It discusses the parties' respective payment
> obligations. It refers to the earlier provisions within the Redemption
> Agreement describing the calculations of the parties' shares of the
> closing moneys resulting from the sale of the property.
> Accordingly, there is no question as to the redemption process.

Despite the fact that there was "no question as to the redemption process,"

and despite the fact that the Redemption Agreement allowed Bagwell to receive

roughly 70% of the proceeds from any sale of the joint venture property and

allowed the Trammels to receive roughly 30% of such proceeds, the trial court

makes no mention of this legally binding contract in its final order on the bench

trial in which it awards a 50/50 split of the sales proceeds to each of the parties.

Even if we assume that, because the trial court referenced the Redemption

Agreement in its prior summary judgment order, it must have also considered

the Redemption Agreement in its final order, that still does not change the fact

that the trial court engaged in absolutely no analysis in its final order to explain

why the Redemption Agreement was no longer a factor that weighed in favor of

a 70/30, rather than a 50/50, split of the sales proceeds from the sale of the

Etowah Ventures property. Indeed, without such an analysis, the trial court's

3

final decision appears to run counter to its prior finding in its summary judgment order that there was "no question as to the [70/30] redemption process" under this "clear and unambiguous" agreement.

Worse still, through its ruling, that trial court has essentially nullified the legally binding Redemption Agreement. Specifically, now that the trial court has declared that a 50/50 split shall take place with respect to the sale of the Etowah Ventures property, that ruling has become binding on the parties and Bagwell can do nothing to challenge it – despite the fact that he holds a valid legal agreement requiring a 70/30 split of the proceeds. At the very least, the trial court must offer some analysis as to why it would be authorized to basically ignore, and essentially nullify, the parties' previously agreed to 70/30 split of sales proceeds in its ruling on equitable partition when it had previously ruled that there was "no question as to the [70/30] redemption process." However, based on the trial court's final order, it appears as though the trial court may have failed to consider the Redemption Agreement altogether. As a result, it cannot be conclusively said that the trial court did not abuse its discretion when it decided, contrary to the clear and unambiguous terms of the Redemption Agreement, that it was authorized to discount the agreement entirely and impose

4

a 50/50 split on sales proceeds in a manner that runs directly contrary to the parties' prior agreement.

I would therefore vacate the trial court's decision and remand this case for further proceedings.