**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 28, 2019**

# In the Court of Appeals of Georgia

A19A0751. SEXTON et al. v. SEWELL et al.

REESE, Judge.

In the case involving the breach of a real estate sales contract, the prospective purchasers of the property at issue ("Property"), Zachary and Carrie Sexton ("Buyers"), appeal from the grant of summary judgment to the sellers of the property, Russell and Linda Sewell ("Sellers") and the Sellers' broker, Beacham & Company, LLC, d/b/a Beacham & Company Realtors ("Broker"). The Buyers contend that the trial court erred in ruling that the Sellers were entitled to specific performance of the sales contract as a matter of law and that the Broker was entitled to its full commission as liquidated damages.[1] For the reasons set forth, infra, we reverse the

---

[1] The Buyers also contend that the trial court erred in awarding attorney fees to the Broker. This issue is addressed in Division 6, infra.

grant of summary judgment to the Sellers on their claim for specific performance of the sales contract. In addition, we reverse the court's grant of summary judgment to the Broker on its claim for its commission under the sales contract.

Viewed in the light most favorable to the Buyers,[2] the record shows the following undisputed facts. In March 2017, the Buyers were searching for a home in the Kingswood neighborhood of Atlanta, and their real estate agent learned that the Sellers were preparing to place their Property up for sale in the near future. Before the Property was listed for sale, however, the Buyers toured the home March 31, 2017, and offered to purchase it for $1,775,000. The Buyers' agent drafted a purchase and sales agreement (the "Contract"), which the parties executed the same day, March 31, 2017, and the Buyers put down $40,000 in earnest money. The Contract provided a two-week due diligence period, during which the Buyers could cancel the Contract without incurring a penalty. During that period, the Property was appraised for $1,850,000, or $75,000 more than the Contract price. The closing on the Contract was scheduled for June 22, 2017.

On May 13, about one month after the two-week due diligence period had expired, and almost six weeks before the closing date, the Buyers notified the Sellers

_____

[2] See *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

that they were moving to North Carolina for "personal, family reasons." The Buyers, however, assured the Sellers that they still intended to close on the Property. Under the circumstances, the Buyers intended to purchase and then resell the Property, and they asked the Sellers to accommodate them by allowing them to show the Property to other potential buyers. The Sellers allowed the Buyers to show the Property to potential buyers on one day, Wednesday, May 17, from 10 a.m. to 5:00 p.m., but no re-sale resulted. Other than on that day, the Sellers did not allow the Buyers to show the Property to other potential buyers or to list the Property for sale.[3]

On May 22, the Buyers notified the Sellers that they intended to unilaterally terminate the Contract, and they relinquished the $40,000 in earnest money.[4] The Sellers refused the offer, and, on May 24, the Sellers' attorney informed the Buyers that, if they failed to appear at the closing on June 22, the Sellers would pursue an

---

[3] However, between May 23 and the closing date, June 22, the Sellers showed the Property to other potential purchasers, and the Sellers intentionally kept this information from the Buyers. The Broker's agent apparently informed at least some of the potential purchasers that the asking price for the Property was $1,895,000, i.e., $120,000 more than the Contract price in the instant case.

[4] In fact, between May 22 and the closing date, June 22, the Buyers offered to pay the Sellers twice the amount of the earnest money, i.e., $80,000, to release them from the Contract, but the Sellers did not respond to the offers. And, on October 31, after the Sellers had filed suit, the Buyers offered to pay up to $85,000 to settle, but the Sellers did not respond or make a counter-offer.

3

action seeking specific performance of the Contract and/or money damages. When the Buyers failed to close on the Property, the Sellers filed the instant action in June 2017, seeking specific performance of the Contract, incidental damages, and attorney fees.[5] In the same suit, the Broker asserted claims for its sales commission, pursuant to the Contract, and for attorney fees.

The Sellers filed a motion for partial summary judgment, and the Buyers filed a cross-motion for partial summary judgment. Following hearings, the trial court granted the Sellers' motion and denied the Buyers' motion, but it reserved a ruling on the claims for "ancillary damages" and attorney fees. This appeal followed.

> In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment[,] the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[6]

---

[5] We note that the Sellers did not file a claim for monetary damages arising from the Buyers' breach, with the exception of incidental damages.

[6] *Benton*, 280 Ga. at 470.

With these guiding principles in mind, we turn now to the Buyers' specific claims of error.

1. The Buyers contend that the trial court erred when it ruled that the Sellers were entitled to specific performance of the sales contract, despite the fact that the Sellers had an adequate remedy at law. Thus, they argue that the trial court erred in granting summary judgment to the Sellers and in denying their (the Buyers') motion for summary judgment. We agree.

"Specific performance is an extraordinary, equitable remedy, which will be granted only if the complainant does not have an adequate remedy at law. It is not a remedy that either party can demand as a matter of absolute right and will not be granted in any given case unless strictly equitable and just."[7] Thus, even when specific performance might otherwise be appropriate, it should be denied "if it would cause unreasonable hardship or loss to the party in breach or to third persons."[8]

_____

[7] *Kirkley v. Jones*, 250 Ga. App. 113, 115-116 (2) (550 SE2d 686) (2001). See *Clayton v. Deverell*, 257 Ga. 653, 654 (3) (362 SE2d 364) (1987); *Peachtree on Peachtree Investors v. Reed Drug Co.*, 251 Ga. 692, 696 (2) (308 SE2d 825) (1983); *Wehunt v. Pritchett*, 208 Ga. 441, 444 (67 SE2d 233) (1951); see also OCGA § 23-1-4 ("Equity will not take cognizance of a plain legal right where an adequate and complete remedy is provided by law[.]").

[8] *Peachtree on Peachtree Investors*, 251 Ga. at 697 (2) (quoting the Restatement of Contracts, Second, § 364).

5

"As a general rule, a party to a contract may seek specific performance of a contract upon a showing that [monetary] damages recoverable at law would not constitute adequate compensation for another parties' nonperformance."[9] Thus, "[e]quitable relief is improper if the complainant has a remedy at law which is adequate, i.e., as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity."[10] It necessarily follows that, in order to obtain an award of specific performance, the plaintiff must present evidence to show his "entitlement to the extraordinary remedy of specific performance"[11] by, inter alia, demonstrating that he has no adequate remedy at law.[12] Therefore, the threshold question in the instant case is whether the Sellers met their burden of showing that

[9] *Bagwell v. Trammel*, 297 Ga. 873, 875 (1) (778 SE2d 173) (2015). See OCGA § 23-2-130 ("Specific performance of a contract, if within the power of the party, will be decreed, generally, whenever the damages recoverable at law would not be an adequate compensation for nonperformance.").

[10] *Liberty Capital v. First Chatham Bank*, 338 Ga. App. 48, 51 (1) (789 SE2d 303) (2016) (physical precedent only) (citation and punctuation omitted). See *Kirkley*, 250 Ga. App. at 115-116 (2).

[11] *Bagwell*, 297 Ga. at 875 (1).

[12] See *Liberty Capital*, 338 Ga. App. at 51 (1) (physical precedent only); see also *Forsyth County v. Waterscape Svc.*, 303 Ga. App. 623, 637 (4) (b) (694 SE2d 102) (2010) (holding that the plaintiff had met its burden of showing that it had no adequate remedy at law and, thus, was entitled to specific performance).

6

they did not have an adequate remedy at law available to them that would have compensated them for the Buyers' breach of the Contract. The undisputed evidence clearly shows that they failed to meet this burden.

First, the Sellers could have accepted the Buyers' tender of the $40,000 in earnest money when the Buyers notified them that they wanted to unilaterally terminate the Contract on May 22, which was about seven weeks after the Contract was executed on March 31. The Sellers would then have been able to immediately put the Property back on the market to sell to someone else while retaining the Buyers' $40,000.[13] The Sellers have failed to explain why $40,000, plus the proceeds of the sale, would not have constituted an "adequate remedy" for them under the circumstances presented.[14]

---

[13] See generally *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 228-229 (227 SE2d 340) (1976) ("Depending on the language used in the contract and the discernible intent of the parties, the existence of an earnest money provision in a real estate sales contract can have one of three effects in the case of a breach by the buyer. First, the money could be considered as partial payment of any actual damages which can be proven as the result of the buyer's breach. Second, the money could be applied as part payment of the purchase price in the enforcement of the contract in a suit for specific performance by the seller. Third, the money could be liquidated damages for breach of the contract by the buyer. A provision for earnest money cannot, however, under Georgia law, be used for all three results[.]").

[14] The $40,000 earnest money figure equals about 2.25 percent of the Contract price. See generally *Swan Kang, Inc. v. Kang*, 243 Ga. App. 684, 687 (1) (534 SE2d

Further, the undisputed evidence shows that, if the Sellers had placed the Property on the market soon after the Buyers expressed their intent to terminate the Contract, the Sellers would have been able to quickly sell the Property for *at least* the Contract price. For example, in a June 16 text message to the Sellers, the Broker's agent told them, "I absolutely can sell your house again. There is no question about that."[15] And it is undisputed that, in April 2017, the Property was appraised at $1,850,000, or $75,000 more than the Contract price. Thus, if the Sellers had pursued this option, they would have been able to keep the $40,000 in earnest money *and* the proceeds from the sale of the Property.[16] There is nothing in the record to suggest that this would not have constituted an adequate remedy at law that would have precluded an award of specific performance to the Sellers under the circumstances presented.

Second, between May 22, when the Buyers notified the Sellers that they intended to terminate the Contract, and the proposed closing date, June 22, the Buyers offered to pay the Sellers *twice* the amount of the earnest money, i.e., $80,000, to

145) (2000) (holding that, absent any evidence to the contrary, an earnest money payment representing about two percent of the purchase price was reasonable).

[15] Notably, this text was sent *before* the June 22 closing date.

[16] The Broker's agent even advocated for this resolution in a text message to the Sellers.

8

release the Buyers from the Contract. Yet, the Sellers did not respond to the offer or make a counter-offer. As above, there is nothing in the record that would support a finding that $80,000, plus the proceeds of the sale of the Property to a different party, would not have constituted an adequate remedy at law under the circumstances presented.

Third, the Sellers could have immediately sued the Buyers for money damages arising from the breach.

> [I]f the real estate sales contract is silent on the remedy to be provided, the non-breaching seller is entitled to his proven actual damages. The ordinary measure of damages is the difference between the contract price and the market value of the property at the time of the buyer's breach. If the non-breaching seller sues for actual damages, the earnest money then becomes a fund out of which those damages are partially paid if the proven damages exceed the amount of the earnest money.[17]

Therefore, this was an objective method for calculating the Sellers' damages that constituted another adequate remedy at law.[18]

---

[17] *Southeastern Land Fund*, 237 Ga. at 229. Accord *Quigley v. Jones*, 255 Ga. 33 (334 SE2d 664) (1985); *Roba v. Dotson*, 315 Ga. App. 721, 722 (727 SE2d 542) (2012).

[18] In their motion for partial summary judgment in the trial court, the Sellers argued that, because the Property had been appraised for $1,850,000 in April 2017,

Despite this, the Sellers argue that they were automatically entitled to specific performance as a matter of law because monetary damages would never constitute an adequate remedy at law, relying on the general principle that, when the contract to be enforced involves the sale of real property, "all real property is considered unique." Under the circumstances presented here, this argument lacks merit.

With one exception, all of the cases cited by the Sellers for this proposition involved facts and/or law that clearly distinguished them from the instant case, in that they involved: a buyer or renter seeking specific performance of a contract to sell or lease property; a contract involving the sale of personal property (to which different rules apply); or the grant of an injunction prohibiting a tenant from selling pornographic materials.[19] The exception is *Hampton Island, LLC v. HAOP, LLC*,[20] a

---

but the Contract only provided for a sales price of $1,775,000, the Buyers would not have been liable to Sellers for *any* damages if the Sellers had sued for money damages, so they would have had no adequate remedy *against the Buyers* for the latter's breach. This argument suggests that the Sellers were more focused on these particular Buyers than on the additional $100,000 or so that they might have made from the sale of the Property to others if they had simply listed the Property for sale. See, e.g., Footnote 29, infra.

[19] See, e.g., *Black v. American Vending Co.*, 239 Ga. 632 (238 SE2d 420) (1977) (involved personal property); *Irwin v. Dailey*, 216 Ga. 630 (118 SE2d 827) (1961) (involved renter seeking specific performance of an agreement to lease with an option to purchase real and personal property); *F. & W. Grand Five-Ten-Twenty-Five Cent Stores v. Eiseman*, 160 Ga. 321 (127 SE2d 872) (1925) (involved renter

case wherein this Court affirmed the trial court's order granting summary judgment

to the sellers on their claim for specific performance of a real estate sales contract.

The essential facts in *Hampton Island*, however, are clearly distinguishable from the

instant case. In *Hampton Island*, the seller had originally purchased the property

("Agreement 1") from a company that was a predecessor entity of the purchaser.[21]

Following the original sale, the company defaulted on its obligations under

Agreement 1, and, in an effort to resolve the resulting dispute, the purchaser agreed

to buy back the property from the seller for $1,000,000.[22] The parties negotiated the

conditions of a new sales contract ("Agreement 2"), which included a provision that,

if the purchaser defaulted on that payment obligation, the seller had the right to seek

---

suing property owner for specific performance of lease); *Waterscape Svcs.*, 303 Ga. App. at 637 (involved buyer seeking specific performance from seller); *Ayer v. Norfolk Timber Investment*, 291 Ga. App. 409 (662 SE2d 221) (2008) (involved buyer seeking an injunction preventing the seller from selling to a third party); *Focus Entertainment Intl. v. Partridge Greene, Inc.*, 253 Ga. App. 121 (558 SE2d 440) (2001) (physical precedent only) (involved owner of mall seeking injunction against a property owner to enforce a restrictive covenant in the deed to the property that prohibited the sale or display of pornographic materials).

[20] 306 Ga. App. 542 (702 SE2d 770) (2010).

[21] Id. at 542-543.

[22] Id. at 543.

specific performance of Agreement 2.[23] When the purchaser defaulted on Agreement 2, the seller sued, and the trial court granted the seller's request for specific performance.[24]

On appeal, this Court ruled that it was "well established that monetary damages are not an adequate legal remedy where . . . the contract sought to be performed involved the sale of unique real property[,]" and also held that the rule applied regardless whether it was the seller or the purchaser who was seeking specific performance.[25] Then, noting that Agreement 2 specifically provided that the seller had the right to seek specific performance if the purchaser defaulted on its payment obligation, this Court concluded that the trial court "correctly determined that the [seller] did not have an adequate remedy at law."[26]

In this case, the Sellers contend that the *Hampton Island* decision established a rule that automatically entitles them to specific performance, arguing that the case stands for the proposition that monetary damages *never* constitute an adequate

[23] Id.

[24] Id.

[25] Id. at 548 (5).

[26] Id. at 549 (5).

remedy at law following the breach of a real estate sales contract, regardless of the circumstances. To the extent that the ruling could be so construed, it would be dicta because it would constitute an overly broad and conclusory rule that was not adequately tailored to the unique facts presented in that case.[27]

This is because, even assuming that each and every parcel of land, house, apartment, condominium, etc, is, in fact, "unique," there is nothing "unique" about cash, or more specifically, the cash of potential purchasers. As shown above, the undisputed evidence in this case shows that the Sellers could have sold the Property to other purchasers for a price comparable to that in the Contract (or more) if they had listed the Property for sale after the Buyers notified the Sellers of their (the Buyers') intent to terminate the Contract. Then, the Sellers could have kept the proceeds of the sale *and* the $40,000 in earnest money paid by the Buyers. One of the Sellers even admitted in her deposition that, around the time the Buyers backed out of the Contract, if someone other than the Buyers had given her a check for $1,775,000 to purchase the Property, that would have been satisfactory to her.

---

[27] By so stating, we do not suggest that this Court erred in affirming the grant of specific performance to the seller in *Hampton Island*, particularly given the unique facts presented therein.

Further, it is undisputed that the Sellers did not make any changes to the Property to accommodate these specific Buyers that caused the Sellers to incur additional expenses[28] or that made the Property less attractive to other potential purchasers. Simply put, there was nothing "unique" about the Buyers in this case that would support an order requiring these *specific* Buyers to purchase the Property.[29]

_____

[28] On the contrary, the Contract specifically states that the Property was being sold "as is." Cf. *Hughes v. Great Southern Midway*, 265 Ga. 94 (454 SE2d 130) (1995) (The Supreme Court affirmed the trial court's grant of the seller's request for specific performance because the seller had rezoned the property at the insistence of the buyer, who then breached the sales contract.).

[29] Significantly, the record disproves any suggestion that the Sellers actually wanted the Buyers, specifically, to own the Property due to some prior relationship between the parties or the Sellers' particular fondness for the Buyers. Instead, the record shows that the Sellers never met the Buyers prior to receiving the Buyers' notice of their intent to terminate the Contract and that, after receiving the notice, one of the Sellers texted the Broker, "I see [the Buyers] planning [their] revenge and escape!!! I am so negative about [them,]" "I really despise the [Buyers]! I really wish we could make them close[,]" and "I want [the Buyers] to hurt too." The Seller also specifically texted that it would be a "pleasure" to sell the Property to another potential buyer so she would not have to deal with "devious people like [the Buyers,]" describing them as "lack[ing] integrity and class." She also referred to the Buyers as "[b]ottom feeders[ ]" and "dirty, no integrity. No honor slime. !!!"

Given this evidence, we emphasize that breach-of-contract damages are intended to compensate the injured party for the breach and are not authorized to punish the breaching party. See OCGA §§ 13-6-10 ("Unless otherwise provided by law, exemplary damages shall never be allowed in cases arising on contracts."); 51-12-5.1 (a) ("[T]he term 'punitive damages' is synonymous with the terms 'vindictive damages,' 'exemplary damages,' and other descriptions of additional damages awarded because of aggravating circumstances in order to penalize, punish, or deter

14

Thus, we reject the assertion that, simply because real property is generally considered to be "unique," the Sellers in this case were automatically entitled to specific performance of the Contract.

The Sellers also argue that, under the decisions of the Supreme Court of Georgia in *Laseter v. Brown*,[30] *Golden v. Frazier*,[31] and *Holloway v. Giddens*,[32] a contract that is "in writing, signed by the parties, [is] certain and fair, [provides] for adequate consideration, and [is] capable of being performed[, is] specifically enforceable."[33] While those cases hold that specific performance is an "appropriate"

---

a defendant."); 51-12-5.1 (c) ("Punitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant."); *Clayton*, 257 Ga. at 655 (5) (b) ("[I]n an action for breach of contract, punitive damages cannot be awarded in the absence of evidence showing tortious conduct on the part of the defendant.").

[30] 251 Ga. 179 (304 SE2d 72) (1983).

[31] 244 Ga. 685, 687 (1) (261 SE2d 703) (1979).

[32] 239 Ga. 195, 197 (236 SE2d 491) (1977), overruled on other grounds, *Brown v. Frachiseur*, 247 Ga. 463, 465 (277 SE2d 16) (1981).

[33] *Laseter*, 251 Ga. at 180 (2). The Sellers also cited to *CDM Custom Homes v. Windham*, 280 Ga. App. 728, 731-732 (1) (634 SE2d 780) (2006); *Stinchcomb v. Wright*, 278 Ga. App. 136, 139 (2) (a) (628 SE2d 211) (2006); *Bourke v. Webb*, 277 Ga. App. 749, 751 (1) (627 SE2d 454) (2006), for this proposition.

15

remedy under such circumstances,[34] none of them hold that a court of equity *must* order that a contract be specifically performed simply if the contract meets such criteria. More importantly, in *none* of those cases did the appellate court address whether the plaintiffs had an adequate remedy at law that would have precluded specific performance.[35] Thus, while the cases hold that a plaintiff may *seek* specific performance if the sales contract meets certain requirements, they do not stand for the proposition that the plaintiff is automatically entitled to specific performance absent a showing that no adequate remedy at law exists.[36]

Finally, the Sellers argue that, because the Contract did not *require* them to accept the earnest money if the Buyers defaulted,[37] but instead allowed them to

---

[34] See, e.g., *Laseter*, 251 Ga. at 180 (2).

[35] See *Laseter*, 251 Ga. at 180 (2); *Golden*, 244 Ga. at 687 (1); *Holloway*, 239 Ga. at 197; *CDM Custom Homes*, 280 Ga. App. at 731-732 (1); *Stinchcomb*, 278 Ga. App. at 139 (2) (a); *Bourke*, 277 Ga. App. at 751 (1).

[36] See generally *State v. Walker*, 295 Ga. 888, 893 (764 SE2d 804) (2014) (Appellate court decisions "stand only for the points raised by the parties and decided by the court. Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (citations and punctuation omitted).

[37] The Contract provided that, if the Buyers defaulted, the Sellers could accept the earnest money as "liquidated damages in full settlement of all claims of Seller[s] against Buyer[s,]" but also stated that nothing in the Contract prevented the Sellers

16

choose "any lawful remedy" for the breach,[38] they "had the absolute right" to choose specific performance. However, because the Sellers could have obtained an award of monetary damages that adequately compensated them for the Buyers' breach, then specific performance was not a "lawful remedy" for them to choose, because they had an adequate remedy at law available to them.

Thus, we conclude that the Sellers failed to meet their burden of showing that they had no adequate remedy at law and, as a result, failed to demonstrate that they were entitled to the equitable award of specific performance of the Contract.[39] Consequently, the trial court erred in granting summary judgment to the Sellers on

---

from refusing to accept the earnest money as liquidated damages.

[38] The Contract provided: "Rights of Buyer or Seller: A party defaulting under this Agreement shall be liable for the default. The non-defaulting party may pursue any lawful remedy against the defaulting party."

[39] See *Peachtree on Peachtree Investors*, 251 Ga. at 697 (2) (holding that, under the circumstances presented, the trial court did not err in finding that money damages constituted an appropriate relief and in denying the plaintiff's claim for specific performance as a result); *Liberty Capital*, 338 Ga. App. at 53 (1) (physical precedent only) (holding that the trial court erred in awarding the plaintiff specific performance of the contract when the plaintiff failed to show that there was no adequate measure of damages that would remedy the defendant's nonperformance as a matter of law).

their claim for specific performance and in denying summary judgment to the Buyers on that claim.

2. The Buyers contend that the Sellers were not entitled to specific performance of the Contract because they (the Buyers) had no notice prior to executing the Contract that the Sellers could seek specific performance as a remedy if they (the Buyers) breached the Contract. It is undisputed that the Contract does not refer to specific performance as a remedy for a breach,[40] and the record shows that the first time the Buyers had notice that the Sellers might seek specific performance was on May 24, shortly after the Buyers had notified the Sellers that they wanted to terminate the Contract and relinquish the earnest money.

The Buyers present a compelling argument that, absent some notice in the sales contract, it is unlikely that a typical purchaser of real property would understand that they could still be compelled to purchase the property if they decided to back out of

---

[40] Cf. *Quigley*, 255 Ga. at 34, n. 1 (The contract stated that, in the event the sale was not closed due to the inability or fault of the purchaser, "the earnest money is to be applied by seller to seller's damages, but receipt of such money by seller shall not prejudice or eliminate seller's right to obtain specific performance and/or recover additional damages under this contract.") (punctuation omitted); *Hampton Island, LLC*, 306 Ga. App. at 543 (The real estate sales contract specifically stated that, if the buyer defaulted on its payment obligation under the contract, the seller had the right to seek specific performance and damages.).

18

the Contract (versus simply forfeiting the earnest money). However, the Supreme Court of Georgia has held that specific performance is an available remedy for the breach of a contract for the sale of real property, even if the contract does not say so, unless the contract expressly *excludes* specific performance as an option.[41] Thus, even though the Contract in this case did not expressly exclude specific performance as a remedy for the Buyers' breach, the Sellers were not barred from *seeking* specific performance.

As explained in Division 1, supra, however, the Sellers failed to show that they were entitled to specific performance due to the lack of an adequate remedy at law. Thus, this issue is moot.

3. The Buyers also argue that the trial court erred in granting summary judgment to the Sellers on the claim for specific performance because jury issues exist as to whether the Sellers failed to mitigate their damages[42] and whether the

---

[41] See *Laseter*, 251 Ga. at 180 (1); *Southeastern Land Fund*, 237 Ga. at 228-229 (The Court held that, even if a real estate contract does not mention specific performance as a remedy, specific performance is still available unless it is specifically excluded, although the contract in that case actually mentioned specific performance as a potential remedy that could be pursued by the non-breaching party.).

[42] See OCGA § 51-12-11 ("When a person is injured by the negligence of another, he must mitigate his damages as far as is practicable by the use of ordinary care and diligence. However, this duty to mitigate does not apply in cases of positive

19

Sellers acted with "unclean hands"[43] to prevent the Buyers from closing on the contract. Given our decision in Division 1, supra, however, those issues are moot.

4. The Buyers contend that the trial court erred in awarding the Broker its commission under the sales contract. Specifically, the Buyers argue that the liquidated damages provision in the Contract constituted an unenforceable penalty as a matter of law and that a jury issue existed as to whether the Broker was entitled to the entire commission. The provision states:

> Rights of Broker: In the event a party defaults under this Agreement, the defaulting party shall pay as liquidated damages to every broker involved in this transaction with whom the defaulting party does not have a brokerage engagement agreement an amount equal to the share of the commission the broker would have received had the transaction

and continuous torts.").

[43] See *Hampton Island, LLC*, 306 Ga. App. at 546 (3) ("Georgia law provides that a party can be barred from obtaining the equitable relief of specific performance if he is guilty of unclean hands. . . . The unclean hands doctrine has reference to an inequity which infects the cause of action so that to entertain it would be violative of conscience.") (citations and punctuation omitted); see also OCGA § 23-1-10 ("He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action.").

closed. . . . The liquidated damages referenced above are a reasonable pre-estimate of the Broker['s] actual damages and are not a penalty.[44]

(a) As an initial matter, to the extent that the trial court granted summary judgment to the Sellers on their claim for specific performance *and* granted judgment in favor of the Broker on its claim to the full commission under the Contract, such ruling was erroneous. Because the trial court upheld the Contract when ordering specific performance, the Sellers were bound by the Contract as written, i.e., as if there had been no breach.[45] So viewed, the Contract provided that the "Seller[s] shall pay a [six percent] commission at closing to be split between [the Broker] and [the Buyers' Broker] ([three] percent and [three] percent)."[46] Thus, if the Contract in this case was going to be enforced as written, then the Sellers had to "bear the contractual obligation of paying the commission to the [Broker]."[47] It follows that the trial court

---

[44] The Contract also provides that "[t]he Brokers herein are signing this Agreement to reflect their role in this transaction[.]"

[45] See *Golden*, 244 Ga. at 688 (4).

[46] Given the Contract's sale price of $1,775,000 for the Property, a three percent commission for the Broker would have equaled $53,250.

[47] *Golden*, 244 Ga. at 688-689 (4).

erred to the extent it ordered the Buyers to pay the Broker's sales commission *on top of* the Contract price for the Property.

(b) However, because we are reversing the grant of specific performance of the Contract in this case, as explained in Division 1, supra, the Buyers could be held liable for paying the Broker's sales commission under the Contract, in addition to the Sellers' monetary damages for the Buyers' breach. The issue remains whether, under the circumstances presented, the provision requiring the Buyers to pay the full amount of the Broker's sales commission is an enforceable liquidated damages provision or an unenforceable penalty for the Buyers' breach.

> Georgia law . . . recognizes that the parties may agree in their contract to a sum to liquidate their damages. [OCGA § 13-6-7 provides]: ["If] the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated, and unless the agreement violates some principle of law, the parties are bound thereby." In deciding whether a contract provision is enforceable as liquidated damages, the court makes a tripartite inquiry to determine if the following factors are present: First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and third, the sum stipulated must be a reasonable pre-estimate of the probable loss.[48]

---

[48] *Southeastern Land Fund*, 237 Ga. at 230 (citations, punctuation, and emphasis omitted).

22

"Of course, whether a provision represents liquidated damages or a penalty does not depend upon the label the parties place on the payment but[,] rather[,] depends on the effect it was intended to have and whether it was reasonable."[49] "[I]n cases of doubt[,] the courts favor the construction which holds the stipulated sum to be a penalty, and limits the recovery to the amount of damages actually shown, rather than a liquidation of the damages."[50]

Here, the undisputed evidence shows that, at the time the parties entered into the Contract, the Broker had not performed *any* significant efforts to sell the Property. Although, in March 2017, the Sellers were planning to put the Property on the market soon, they had not yet chosen a real estate agent or listed the Property for sale. Thus, prior to the Contract being executed, the Broker had no contract with the Sellers, and had not listed the Property, erected any "for sale" signs, staged or photographed the Property, or taken any other efforts to market the Property. Indeed, it was the *Buyers' agent* who contacted the Broker's agent, a resident of the Kingwood neighborhood,

---

[49] Id. at 228.

[50] Id. at 231 (citation and punctuation omitted). See *Swan Kang, Inc.*, 243 Ga. App. at 686 (1) ("The party who defaults under the contract bears the burden of proving that the liquidated damages clause is an unenforceable penalty. The enforceability of such a clause is a question of law for the court.").

23

to see if any properties were available in the area. The Buyers' agent then obtained permission to show the Property to the Buyers on March 30, 2017, and *by the end of the next day*, the Buyers had viewed the Property and made an offer, their agent had drafted the Contract, and the parties had executed the Contract without any changes. Under these circumstances, the Broker has failed to demonstrate that, at the time the Contract was executed, a $53,250 sales commission constituted "a reasonable pre-estimate of the [Broker's] probable loss."[51]

Moreover, the record shows that the Sellers encouraged the Broker to sue for its commission in order to strengthen the Sellers' "case" and force the Buyers to "cave," i.e., acquiesce and close on the Property. In response, the Broker's agent texted that the Buyers "need to learn a big lessen the hard way."

Under these circumstances, we find that the Contract provision at issue constitutes an unenforceable penalty and that the trial court erred in granting summary judgment to the Broker on its claim for the full amount of the sales commission under the provision.

---

[51] *Southeastern Land Fund*, 237 Ga. at 230 (citations and punctuation omitted).

However, because a jury issue remains as to the Broker's actual damages, if any, a grant of the Buyers' motion for summary judgment is precluded. Therefore, this issue must be addressed in the trial court on remand.

5. The Buyers contend that the trial court erred in granting summary judgment to the Sellers on the claim for incidental damages that allegedly arose from the Buyers' breach of the Contract. However, the trial court's order states that, while the court granted the Sellers' motion for summary judgment, the court would consider the "issue[ ] of ancillary damages" on its next available trial calendar. Thus, it appears that the trial court reserved judgment on the claim for incidental damages.[52] It follows that there is nothing for this Court to review on this issue in the instant appeal.

6. The Buyers also contend that the trial court erred in awarding the Broker its attorney fees. However, the trial court's summary judgment order specifically reserved a ruling on the issue of attorney fees, stating that the issue would be heard on the next available trial calendar. Thus, there is nothing for this Court to review on this issue at this time.

---

[52] This conclusion is supported by the pre-trial order filed in the record after the court issued its summary judgment order. In the pre-trial order, the parties identified the issue of "incidental damages/carrying costs" as one that required resolution by a jury.

In summary, we reverse the grant of summary judgment to the Sellers on their claim for specific performance. In addition, we reverse the grant of summary judgment to the Broker on its claim for its commission under the Contract, and remand that issue to the trial court for jury resolution.

*Judgment reversed and case remanded with direction. Miller, P. J., and Rickman, J., concur.*