JANE GRIMES *et al.*, plaintiffs in error, *vs.* THOMAS J. LITTLE, trustee, *et al.*, defendants in error.

1. When two trustees deal with each other, both believing that authority exists for one to purchase from the other a full tract of land, when the authority really extends only to part of the tract, the trust estates will be tenants in common in equity ; the vendee owning, when paid for, all that could be legally purchased, and the vendor the balance, it being unpaid for. After the land has greatly depreciated, partition, and not rescission, is the remedy 'for adjusting equities between the parties.

2. When a party collaterally interested is brought in as one of the defendants to a bill for adjusting such equities, and he, answering the bill, prays equity in his own behalf, and the facts make his equity against a co-defendant apparent, the decree should settle his rights as well as those to the original transaction.

3. In decreeing a partition the chancellor should not assume that the average value per acre of the whole tract will hold as to each acre or a given number of acres separately; the land should be divided by metes and bounds according to actual, and not average value ; or if that cannot be done, it should be sold and the proceeds divided.

4. Such amendments of the pleadings may be made as will enable all the parties to reach that equitable relief to which they are severally entitled.

Trust. Equity. Partition. Before Judge POTTLE. Hancock Superior Court. October Adjourned Term, 1875.

Reported in the opinion.

GEORGE F. PIERCE, JR.; J. T. JORDAN, for plaintiffs in error.

C. W. DuBOSE, by SEABORN REESE, for defendants.

JACKSON, Judge.

This was a bill filed by Grimes and others, consisting of a family of children, being *cestui que trusts*, against Little, their trustee, and Lamar, trustee for his children, and Simmons, the purchaser of a judgment against the trust estate of the Grimes family.

The facts are that the Grimes owned a plantation in Washington county which they desired to sell and reinvest the pro-

ceeds in Hancock. Accordingly, Worthen, the predecessor of Little, as trustee for them, applied to the chancellor exercising jurisdiction in Washington county, for leave to sell and reinvest, which was granted to Little, his successor, the present defendant, "to sell at private sale and to reinvest the proceeds, or so much thereof as may be necessary, in some other suitable farm or homestead, for the family." The Washington county place was accordingly sold for $4,200 00, and the plantation of the Lamars, in Hancock, was bought at the price of $5,500 00, or some such sum. Little paid some $4,000 00 in cash, or in subsequent payments, the proceeds of the Washington place, expecting the profits of the place to pay the balance, but those profits were never realized. Lamar gave Little bond for titles, to be made when the note was paid. The note not being paid, Lamar brought suit upon it, and recovered judgment against Little, as trustee, and assigned the judgment to Simmons for some $1,700 00 in cash. Simmons levied upon the Grimes' Hancock purchase, of which they had been in possession for some years, whereupon the Grimes filed this bill against Little, their trustee, Lamar, trustee for his children, from whom the Hancock place was bought, and Simmons, who purchased the judgment and had the *fi. fa.* levied, praying that the judgment be enjoined perpetually, that the whole trade be rescinded, that the Lamars take back their land and pay the money paid for it to complainants, and if they could not pay, that the land be sold and the proceeds applied first, to the payment of their money back to them, and adding a prayer for general relief.

It was then agreed that whole case be submitted to the chancellor, without a jury, to settle all equities between the parties.

The chancellor decreed that two hundred and twenty-seven acres of the whole tract, six hundred and twenty-seven, be carved off by five commissioners named by him, to be sold to pay the *fi. fa.*, and that the Grimes retain the remaining four hundred acres. The Grimes have excepted to this decree, and bring the case here for our review.

Grimes *et al. vs.* Little *et al.*

It is perfectly clear, as the court below held, that the trustee, Little, had no right to go beyond the chancellor's order to reinvest the proceeds, or such part as was necessary to purchase a new home. His promise to pay more was, therefore, without authority, and could not bind the Grimes' trust estate. On the other hand, the Grimes have no right to the entire body of the land, for their money never paid for it. So far we agree with the reasoning of the court precedent to his decree; but we cannot agree with the remedy furnished in that decree. It assumes that all the land is worth the same sum per acre, and estimating it at $8 50, he directs a certain number of acres to be cut off to pay the unpaid judgment, and as the houses are left with the Grimes, he directs another one hundred acres to be carved off to pay for the Lamar share of the houses. The decree seems to us to be arbitrary, nor does it settle the whole case. What is the true *status* of the Grimes and the Lamars in respect to this land under the facts of this case? We think they are tenants in common thereof, and probably that was the idea in the mind of the court below. Equitably they must be tenants in common. It would be unjust to the Lamars to rescind the sale. Property of all sorts has shrunk in value since the sale. The whole land would not bring the money actually paid, and though, perhaps, too much was contracted to be paid at first, yet the bargain was not unconscientious; both trustees appear to have acted fairly, and both families were well satisfied, and had not the price of lands greatly fallen, and hard times come upon us all, in all probability this litigation would not have arisen. The purchase was good and valid as far as the money went. It paid for some of the land, not for all. For that part which the trustee, Little, could, under his authority from the chancellor, buy and pay for out of the proceeds of the Washington place, the Grimes are entitled to have and hold title and possession, and titles to that part should be executed by Lamar to them, or their trustee, because that contract was legal and they have paid for it. To that part which they have not paid for, Lamar, trustee for his children, should re-

tain the title. Now, what are these respective parts of this tenancy in common, and how shall they be ascertained? The law points out the mode, and that is by partition in equity: Code, sections 3183, 3184, 3185. By reference to these sections it will be seen that equity has jurisdiction for partition in just such a case as this, for there are peculiar circumstances here which render this proceeding in equity suitable and just. The decree can be moulded "to meet the general justice and equity of each person entitled," says section 3185, and this is absolutely necessary in this very peculiar case. If it be said that the bill does not ask for a partition of these lands, the reply is, it prays for general relief, and the distinct relief prayed for would be anything but equitable, in our view. Besides, the several defendants answer and pray judgment and justice in their behalf. And as the complainants invoke the aid of equity, they must be ready to do equity and to submit to its behests. In view of the entire case and all the circumstances surrounding it, and the parties and their several equities, we conclude to reverse the decree rendered by the chancellor, and to send the case back with the following instructions:

1st. Let the pleadings be amended, if deemed necessary, so as to reach the proposed remedies.

2d. Let the judgment of the assignee, Simmons, and the execution be forever enjoined, and treating his (Simmons') answer as a cross-bill against his co-defendant, Lamar, let a decree be entered on that cross-bill against Lamar, as trustee, for the amount of money actually paid for the debt enjoined, with interest from its payment, and let him have a lien upon the Lamar share of the plantation in the possession of the Grimes.

3d. Let the bond for titles held by complainants be surrendered, and a deed made to them or their trustee for their share of the land, say forty-two fifty-fifths (42-55,) or whatever part it be found exactly to be, and let Lamar retain title to the balance for his children.

4th. Let the land then be partitioned in the mode usual in

equity, either by metes and bounds, or by sale, as may be found most equitable and just to all parties, assigning the complainants forty two fifty-fiths; or whatever may be found to be their precise share of the whole, and applying the balance, when converted into money, to the recovery on the answer in the nature of a cross-bill of the defendant, Simmons, and the surplus, if any, to Lamar.

As the trustees on both sides seem to have acted in perfect good faith, and with and by the consent of the senior members of both families, we do not think that they, or either of them, should be held personally liable for any default.

The case is anomalous, *sui generis*, involving double trusts, two sets of children, equities all around, and while we may not have reached conclusions that will satisfy everybody, we think we have applied principles of equity to the singular facts of the case which do substantial justice to all.

Judgment reversed.