**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 24, 2025**

# In the Court of Appeals of Georgia

A25A1254. BROWN et al. v. KOI POND CRICKETS, LLC et al.

BARNES, Presiding Judge.

In this case arising from a family dispute over ownership and access to certain residential property, Thomas Clayton Brown, III and Mary Brown Sapp (collectively, "Respondents") appeal from the trial court's final order granting the petition for an equitable partition and sale of the property filed by Koi Pond Crickets, LLC ("KPC"), a company owned by their brother, David Nelson Brown ("David"). The Respondents contend that the trial court erred by (1) awarding an equitable partition when statutory partition procedures provided an adequate remedy at law; (2) denying them an opportunity to buy out KPC's interest in the property in accordance with OCGA § 44-6-166.1 and otherwise failing to adequately consider and protect their

interests as cotenants; (3) granting David sole discretion to select the real estate agent who would list and sale the property; and (4) failing to require judicial confirmation of the sale when the property is sold. For the reasons discussed below, we affirm.

Following a bench trial, we view the evidence in the light most favorable to the trial court's ruling. *Sitterli v. Csachi*, 344 Ga. App. 671, 671 (811 SE2d 454) (2018). So viewed, the evidence[1] showed that the Respondents, David, and Francine Stilwell Brown ("Bebe") are siblings who were involved in a multi-year dispute over the disposition of their mother's estate. Among other assets, the estate included the residential property located at 550 South Hill Street in Griffin, Georgia ("Property"). The Property sits on less than an acre of land; includes a main house, a guest house,

---

[1] At the bench trial and in its final order, the trial court noted that it also considered the evidence and testimony presented at the prior hearing conducted on the Respondents' motion for an interlocutory injunction, which the trial court had denied. The parties did not object at the trial and have not challenged on appeal the trial court's consideration of that evidence and testimony as part of its final ruling on the merits. See OCGA § 9-11-65 (a) (2) (stating that "any evidence received upon an application for an interlocutory injunction which would be admissible upon the trial on the merits shall become a part of the record on the trial and need not be repeated upon the trial"); *Ga. Canoeing Assn. v. Henry*, 263 Ga. 77, 77 (428 SE2d 336) (1993) (explaining that in a bench trial, the trial court may consider "evidence which was heard in connection with the interlocutory injunction and any additional evidence which [the parties] wish[ ] to present"). We have therefore taken into account evidence from the interlocutory injunction hearing in our recitation of the facts and our review of the enumerations of error.

a swimming pool, and a jacuzzi; and is one of several historic homes in the neighborhood. The Property was the siblings' childhood home and was in need of renovation and repair. The mother's estate also included the adjacent residential property located at 554 South Hill Street ("Adjacent Property"). The properties are approximately 20 feet apart.

The siblings ultimately attended mediation and settled their dispute over their mother's estate, and the terms of their agreement were made part of a consent final order entered in January 2023 ("Consent Order"). Under the Consent Order, David was granted sole ownership of the Adjacent Property, while the Respondents and Bebe were granted ownership of the Property "as tenants in common with each holding an undivided one third (1/3) interest therein."

After entry of the Consent Order, a dispute arose between the Respondents and Bebe over payments for some of the repairs to the Property. Because of the dispute, Bebe decided to sell her interest in the Property, and she first offered to sell it to the Respondents, but they were unable to agree on a price. Bebe then offered to sell her interest to David, and they reached an agreement for him to purchase it for $100,000. The sale was consummated in August 2023 through a quitclaim deed from Bebe to

David. The same day, David formed KPC and conveyed his interest in the Property to KPC by quitclaim deed. David is the sole member of KPC.

The Respondents lived elsewhere, but they periodically traveled to Griffin and visited the Property. David lived next door on the Adjacent Property and sometimes would enter the Property. After KPC obtained its ownership interest, the Respondents became embroiled in an ongoing, bitter dispute with David over access and control of the Property. The Respondents installed multiple security cameras around the Property to maintain surveillance, including a camera pointed at David's residence; erected fences and locked gates to hinder David's access to the Property; and communicated with David using language that the trial court described as "patently offensive." Additionally, the Respondents called the police and fire departments on David many times, and they pressed criminal charges against him for the alleged theft of their personal property from the Property that remained pending at the time of the bench trial. In response, David covered and removed some of the security cameras and unplugged and removed two internet routers; turned off the power; broke a window to gain access to the Property; and refused (either individually or through KPC) to pay one-third of the property taxes, utility expenses, and homeowners' insurance. David

4

also filled the jacuzzi with koi fish, plants, and rocks, and he placed notes around the Property accusing the Respondents of never visiting their "sick and dying mother."

David proposed having the Respondents buy out KPC's interest in the Property or having KPC buy out their interests, but no agreement was reached. In September 2023, KPC filed its petition against the Respondents seeking an equitable partition and sale of the Property. The Respondents filed an answer in which they opposed KPC's request for an equitable partition and asserted several counterclaims. Among other counterclaims, the Respondents sought an accounting between cotenants based on the expenses they had incurred and the improvements they had made to the Property. The Respondents also asserted a counterclaim to set aside and cancel the quitclaim deeds conveying an interest in the Property to David and KPC, alleging that David's purchase of Bebe's interest in the Property violated the Consent Order and that David was the alter ego of KPC. Additionally, the Respondents requested that David be joined as a necessary party in light of their counterclaims. During the course of the litigation, the Respondents also asserted that if the trial court ultimately determined that a partition of the Property was necessary, they should be afforded an opportunity

to buy out KPC's interest in the Property under Georgia's statutory partition procedures.

After a bench trial at which the four siblings testified, the trial court entered a detailed final order in which the court, among other things, added David as a counterclaim defendant; granted KPC's request for an equitable partition and sale of the Property; denied the Respondents' counterclaims for an accounting and for the setting aside and cancellation of the quitclaim deeds; ordered KPC to pay to the Respondents its pro rata share of the past-due property taxes, utility costs, and homeowners' insurance and to continue paying its share of those expenses until the sale of the Property; and ordered David to return the jacuzzi area to its prior condition by removing the koi fish, plants, and rocks. To facilitate the sale of the Property, the trial court ordered David to select a licensed real estate agent to list and sell the Property, and the court further specified that the agent would have authority to accept "any commercially reasonable offer that is presented that, in the [a]gent's sole discretion, reflects an appropriate market value for the Property." This appeal followed.

6

1. The Respondents contend that the trial court erred in granting an equitable partition of the Property because Georgia's statutory partition procedures provided an adequate remedy at law.

Georgia law distinguishes between an "equitable" partition, OCGA § 44-6-140 et seq., and a "statutory" partition, OCGA § 44-6-160 et seq. *Pack v. Mahan*, 294 Ga. 496, 496 (755 SE2d 126) (2014). But even in a statutory partition, the trial court "may frame its proceeding and order so as to meet the exigency of the case without forcing the parties into equity." OCGA § 44-6-170. Consequently, "proceedings for a statutory partition sometimes partake of the nature of proceedings in equity," and this permits "certain equities between tenants in common to be taken into consideration in making a partition." (Citations and punctuation omitted.) *Pack*, 294 Ga. at 497.

Nevertheless, "[t]he allowance for certain equitable considerations in statutory partitions . . . was not intended to make the statutory proceeding a substitute in all cases for partition by a court with equitable cognizance, or to deal with all the rights which might be asserted in every case by an equitable proceeding," as the Georgia Code separately "preserves the right of equitable partition." (Citations and punctuation omitted.) *Pack*, 294 Ga. at 497. See OCGA § 44-6-140 et seq. While

statutory partition ordinarily provides an adequate remedy at law, "[e]quity has jurisdiction in cases of partition whenever the remedy at law is insufficient or peculiar circumstances render the proceeding in equity more suitable and just." OCGA § 44-6-140. See *Pack*, 294 Ga. at 497.

The trial court committed no error in determining that an equitable partition of the Property was appropriate. One of the peculiar circumstances that can render a proceeding in equity more suitable and just is where there is "a need to adjust the accounts or claims of the cotenants." *Pack*, 294 Ga. at 497. This includes necessary adjustments to address expenditures of a cotenant for improvements to the property, taxes, or other expenses. See *Baker v. Baker*, 242 Ga. 525, 525-526 (250 SE2d 436) (1978). While the trial court denied the Respondents' counterclaim for a full accounting of the amount due them for all of the expenses they incurred and improvements they made to the Property, the court adjusted the accounts and claims of the cotenants to some degree by determining that KPC had failed to pay its pro rata share of the property taxes, utility costs, and homeowners' insurance for the Property, ascertaining the amount of those expenses that had been paid by the Respondents, and requiring KPC to reimburse the Respondents for its pro rata share of those payments.

Equity jurisdiction existed in light of the trial court's determination that there was a need for such adjustments. See *Pack*, 294 Ga. at 497. See also *Evans v. Little*, 246 Ga. 219, 220 (271 SE2d 138) (1980) ("Equity jurisdiction shall extend to accounts between tenants in common.") (citation and punctuation omitted).

Another peculiar circumstance justifying a proceeding in equity is where the trial court is called "upon to settle the rights of collaterally interested parties brought into the proceedings as defendants." *Pack*, 294 Ga. at 497, quoting 3A K. Morgan Varner III & Robert H. Turner III, Ga. Jurisprudence Property § 33:13. See *Grimes v. Little*, 56 Ga. 649 (1876). That circumstance existed here, where David was added as a third-party defendant, and when the trial court was called upon by the Respondents to resolve whether the quitclaim deeds conveying an interest in the Property to David and KPC should be set aside and canceled, and thus whether David individually or through KPC held a valid ownership right in the Property. Moreover, the trial court addressed and resolved what responsibilities David had to restore the jacuzzi to its prior condition.

The intense family conflict at the center of the parties' property dispute and the complications caused by the existence of adjacent properties owned by the parties

created another peculiar circumstance justifying an equitable petition. Statutory partition procedures, namely OCGA § 44-6-166.1, would have afforded the Respondents an opportunity to buy out KPC's interest in the Property, with the potential result that the Respondents and David (who lived on the Adjacent Property) would remain neighboring property owners. See *Stone v. Benton*, 258 Ga. 539, 540 (371 SE2d 864) (1988) (explaining that "[t]he legislature added [OCGA §] 44-6-166.1 [to the statutory partition procedure] in order to give a party in interest the opportunity to purchase the land before a public sale is ordered"). However, in its final order, the trial court found that "this is one of the more contentious disputes it has ever had the occasion to preside over" and that "all parties to this dispute have behaved in a way that is utterly childish." The trial court further found that the Property and Adjacent Property were in close proximity to one another and rejected the Respondents' contention that "they could peaceably own [the] Property" next door to David if they were permitted to buy out KPC's interest. Given the ongoing, heated family dispute over the Property, the trial court was authorized to find that continued ownership by one or more of the siblings would necessarily invite further discord, such that a proceeding in equity was justified.

10

Based on the foregoing circumstances, the trial court did not err in granting an equitable rather than statutory partition of the Property.

2. The Respondents contend that even if the trial court was authorized to award an equitable partition, the court abused its discretion by denying them an opportunity to buy out KPC's interest in the Property in accordance with OCGA § 44-6-166.1 and by otherwise failing to adequately consider and protect their interests as cotenants.

"Equitable relief is generally a matter within the sound discretion of the trial court and should be sustained on review where such discretion has not been abused. The findings of fact on which a court relies in fashioning an equitable remedy will not be disturbed unless clearly erroneous." (Citations and punctuation omitted.) *O'Connor v. Bielski*, 288 Ga. 81, 82 (1) (701 SE2d 856) (2010). We discern no abuse of discretion by the trial court here.

(a) As to whether the trial court should have applied OCGA § 44-6-166.1, the Respondents point to the general principle that "equity follows the law where the rule of law is applicable and follows the analogy of the law where no rule is directly applicable." OCGA § 23-1-6. Based on this general principle, the Respondents argue that even if the trial court was entitled to proceed with an equitable partition, the court

should have followed the statutory "buy out" procedures set out in OCGA § 44-6-166.1. We disagree. The Respondents' argument would collapse the statutory distinction between equitable and statutory partitions by requiring the same procedures in both types of proceedings. "As OCGA § 44-6-166.1 is a statutory remedy which is part of a partitioning at law, the trial court did not err in failing to follow its procedures" because "the concept of equitable partitioning encompasses the need for flexibility in fashioning a remedy." (Citation and punctuation omitted.) *Chaney v. Upchurch*, 278 Ga. 515, 516 (2)(603 SE2d 255) (2004).

(b) As to the whether the trial court otherwise failed to adequately consider and protect the Respondents' interests, the court acted within its broad discretion in weighing the equities and fashioning a remedy under the unique facts of this case. The trial court in its detailed final order took into account the sequence of events and the ongoing acrimonious interactions between the siblings, and the court concluded that it would be most equitable to the parties to have the Property partitioned and sold by a real estate agent on the open market to eliminate the continued friction of having the siblings retain ownership in adjacent properties. And while the Respondents testified that they believed they could live without further incident next to David if they were

permitted to buy out KPC's interest in the Property, the trial court was not required to credit their testimony in light of the siblings' long history of litigation and infighting. See *O'Connor*, 288 Ga. at 83 (1) (noting that the trial court is the "proper tribunal for deciding . . . the credibility of the witnesses") (citation and punctuation omitted). Moreover, the trial court took additional steps to protect the Respondents' interests by requiring KPC to pay to the Respondents its pro-rata share of the past-due property taxes, utility expenses, and homeowners' insurance and to continue paying its one-third share of those costs until the sale of the Property, and by ordering David to restore the jacuzzi to its prior condition. In so weighing the equities and fashioning these remedies, the trial court acted within its broad discretion to "mold its decree to meet the general justice and equity of each cotenant." OCGA § 44-6-141. See *Bagwell v. Trammel*, 297 Ga. 873, 877 (3) (778 SE2d 173) (2015) (noting that a trial court in an equitable partition proceeding "has broad discretion to consider all of the circumstances" in crafting a suitable and just result).

Furthermore, the Respondents' argument that the trial court failed to sufficiently take into account their interests is predicated on their misreading of the Consent Order. According to the Respondents, David violated the Consent Order by

acquiring Bebe's interest in the Property, transferring his interest to his newly formed limited liability company KPC, and then seeking a partition of the Property. In support of their argument, the Respondents emphasize that the Consent Order included a provision stating that the siblings "release and forever discharge each other from any and all claims or liability that he or she may have against any other of them arising out of this litigation or this . . . Consent Order or involving any of the assets of [their mother] or her estate."

"[A] consent order is essentially a binding agreement of the parties that is sanctioned by a court, and it is subject to the rules governing the interpretation and enforcement of contracts." *City of Centerville v. City of Warner Robins*, 270 Ga. 183, 186 (3) (508 SE2d 161) (1998). And it is axiomatic under the rules of contract construction that a contractual provision must be read "in light of the contract as a whole and in the legal context in which it was created." *Langley v. MP Spring Lake*, 307 Ga. 321, 325 (834 SE2d 800) (2019). As the trial court reasoned, the clear intent from the language of the Consent Order as a whole was to resolve the dispute among the siblings in their prior litigation over their mother's estate, and once the Consent Order was effectuated and the mother's assets were distributed to the siblings, those

assets no longer belonged to the estate, and the siblings "stood in the same position as any other property owner." Moreover, nothing in the language of the release provision restricted a sibling's use or sale of property once it became his or her own. The trial court therefore properly concluded that David's actions did not contravene the Consent Order.

3. The Respondents next contend that the trial court abused its discretion by granting David sole discretion to select the real estate agent who would list and sell the Property. Again, however, a trial court awarding an equitable partition has broad authority to "mold its decree to meet the general justice and equity of each cotenant," OCGA § 44-6-141, and to take into account the totality of the circumstances in fashioning relief. See *Bagwell*, 297 Ga. at 877 (3). The evidence showed that David had previously worked in the real estate industry and was familiar with the local housing market, had bought and sold properties in the county, and had remodeled houses. Additionally, David, unlike the Respondents, lived near the Property. And the acrimonious relationship between the siblings pointed to the potential difficulty in requiring any joint decision-making over selection of a real estate agent. Under these

circumstances, the trial court acted within its discretion in authorizing David to choose the real estate agent who would list and sell the Property.

4. Lastly, the Respondents argue that the trial court erred by failing to require judicial confirmation when the Property is sold and instead granting the real estate agent sole discretion to determine and accept any "commercially reasonable offer" reflecting "an appropriate market value for the Property." It is true, as KPC concedes on appeal, that "sales under decrees in equitable partition proceedings are . . . subject to confirmation." *Pack*, 294 Ga. at 500, n. 2. See OCGA § 23-4-35 ("Sales under decrees in equity shall be subject to confirmation by the judge, who has a large discretion vested in him in reference thereto. Such sales shall not be consummated until confirmed by him."). But "[a] trial court is presumed to have followed the law in rendering a decision, unless and until that presumption is rebutted." *Love v. Fulton County Bd. of Tax Assessors*, 348 Ga. App. 309, 315 (1) (821 SE2d 575) (2018).

The trial court's final order is silent regarding the need for judicial confirmation after the real estate agent accepts an offer to purchase the Property, and the order does not prevent any of the parties from seeking confirmation once a contract for sale has been executed. "In the absence of any explicit ruling by the trial court we cannot

16

assume that it improperly applied the law in the manner posited by the [Respondents]." (Citation and punctuation omitted.) *Dixon v. State*, 350 Ga. App. 211, 214 (1) (828 SE2d 427) (2019). The Respondents have "failed to point to any affirmative evidence of an error, [and] we will not rely on speculation. Instead, we will rely on the presumption in favor of the regularity and legality of all proceedings in the trial court." (Citation and punctuation omitted.) *Lundy v. Hancock County*, 368 Ga. App. 772, 774 (1) (890 SE2d 92) (2023). Because we presume that the trial court intended for any sale of the Property to require judicial confirmation, the Respondents have failed to show a basis for reversal.

*Judgment affirmed. Brown, C. J., and Watkins, J., concur.*